UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY MACINTYRE and KEITH FITTS, Individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>CURRY COLLEGE,<br><br>        Defendant. | C.A. No. 1:25-10585-NMG |

## **DEFENDANT CURRY COLLEGE'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Defendant Curry College ("the College") hereby submits this Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. Plaintiffs' claims on behalf of two of the putative classes they seek to represent are preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) (the "LMRA") and therefore must be dismissed.

Plaintiffs Emily MacIntyre ("MacIntyre") and Keith Fitts ("Fitts") (collectively, "Plaintiffs") seek to extract an exorbitant sum in statutory penalties from the College based on an alleged technical violation of the timely pay requirements of the Massachusetts Wage Act, M.G.L. c. 149, § 148 (the "Wage Act."). Specifically, they contend that the College paid them monthly, despite them not electing to be paid monthly, in violation of the Wage Act.[1] Plaintiffs seek to represent three putative classes consisting of (1) Associate Lecturers, (2) Lecturers, and (3) Senior

---

[1] M.G.L. c. 149, § 148 provides, in relevant part, "employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general and employees whose salaries are regularly paid on a weekly basis or at a weekly rate for a work week of substantially the same number of hours from week to week may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly."

Lecturers and full-time faculty teaching overload courses. First Amended Class Action Complaint, Doc. No. 21 ("Compl.") ¶ 36. Plaintiffs' claims, however, on behalf of Lecturers and Senior Lecturers and full-time faculty teaching overload courses turn on rights and obligations contained in a collective bargaining agreement (the "CBA") between the College and the Curry College Chapter of the American Association of College Professors (the "Union"), which sets forth the terms and conditions of employment for Lecturers, Senior Lecturers and full-time faculty at the College.[2] The CBA specifically provides that "full-time faculty members and part-time faculty members with professorial rank . . . shall receive their base salaries in twelve equal monthly installments on a one-month in advance basis." Ex. A, at Art. XII. M (p. 115). As such, any determination as to whether Plaintiffs and the Lecturers, Senior Lecturers, and full-time faculty they seek to represent were timely paid under the Wage Act requires an interpretation of the CBA and Plaintiffs' claims are therefore preempted by federal labor law. To the extent Plaintiffs believed their pay was late or otherwise paid incorrectly, their recourse was a grievance pursuant to the grievance and arbitration provisions of the CBA. Plaintiffs have failed to exhaust that process and cannot pursue a claim under Section 301 in court. Accordingly, the Complaint should be dismissed as to the claims brought on behalf of the putative classes of Lecturers and Senior Lecturers and full-time faculty teaching overload courses.[3]

---

[2] The collective bargaining agreement, effective June 1, 2021 through May 31, 2023, is attached hereto as **Exhibit A**. For completeness, the College has also attached: 1) an extension agreed upon dated February 18, 2022; 2) an extension dated June 7, 2023; and 3) the subsequent CBA dated June 1, 2024 to May 31, 2027 as **Exhibits B**, **C**, and **D**, respectively. The relevant provisions are not materially different between these versions, but the putative class periods span two applicable CBAs. For simplicity, all references and citations to the CBA refer to the 2021-2023 Agreement.

[3] The College will file an answer on behalf of the remaining putative class of Associate Lecturers after a determination on this motion, unless the Court should order otherwise. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. July 18, 2001).

I. **FACTUAL ALLEGATIONS**[4]

The College is a private university with over 2,000 students and employs both full-time and part-time faculty. Compl. ¶¶ 13-14. MacIntyre was employed by the College as an Associate Professor from August 2014 through December 2022. *Id.* ¶ 10. Fitts was employed as an Associate Lecturer from approximately August 2020 through the beginning of 2023 and has been employed as a Lecturer since approximately August 2023. *Id.* ¶ 11.

As the Complaint acknowledges, the College entered into the CBA with the Union.[5] *Id.* ¶ 28. The CBA applies to full-time faculty roles and part-time faculty roles like Lecturers[6] and Senior Lecturers. Ex. A, at Art. II. T (p. 4), and Art. II. HH (p. 7-8). Full-time faculty includes Instructors, Assistant Professors, Associate Professors, and Professors. *Id.* Lecturers and Senior Lecturers are defined as part-time faculty who are bargaining unit members. *Id.* Associate Lecturers are not included in the bargaining unit. *Id.* at Art. II. H (p. 2).

---

[4] The College accepts the allegations of the Complaint as true for purposes of this Motion only.

[5] Although not attached to the Complaint, the Court may consider and take judicial notice of the relevant collective bargaining agreement(s) and their terms. *See Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 74 (1st Cir. 2014) (courts may review both "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint" when ruling on a motion to dismiss without converting the motion to a motion for summary judgment); *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 94 (D. Mass. 2023) (considering collective bargaining agreement attached to motion to dismiss Massachusetts Wage Act claim based on Section 301 preemption); *Barry v. UMass Mem'l Med. Ctr., Inc.*, 245 F. Supp. 3d 323, 324 (D. Mass. 2017) ("Although the CBA was attached as an exhibit to [defendant's] motion, this Court may consider it in the context of the motion to dismiss [based on Section 301 preemption] because the document's authenticity is not disputed and it is central to Plaintiff's claims.") (*citing Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007)).

[6] In their Complaint, Plaintiffs contend that CBA does not apply to Lecturers. Compl. ¶ 32. Article II of the CBA expressly defines "Faculty" to include "all part-time bargaining unit members, with the ranks of Lecturers and Senior Lecturers . . ." Ex. A, Art. II. T (pg. 4).

The CBA describes the manner and timing of compensation for unit members at length throughout its various provisions. Section M of Article XII, titled "Salary Payments for Full-Time Faculty Members," expressly provides:

> Full-time faculty members and part-time faculty members with professorial rank. . . shall receive their base salaries in twelve equal installments on a one-month in advance basis; e.g., compensation for any pay period shall be paid on the first business day of the month for which the unit member is being paid.

Ex. A, Art. XII. M (p. 115). The CBA also provides that other payments and deductions will be done on a monthly basis. For example:

- Article VIII.D (p. 31) provides that dues or agency fees for all unit members will be deducted in twelve (12) monthly installments;
- Article X.I.3 (p. 46) provides that expense reimbursements for all unit members will be processed on a monthly basis;
- Article X.L.1 (p. 49) provides that long-term disability insurance payments shall be made based on an eligible unit member's monthly salary; and
- Article X.N (p. 50-55) references payments on a monthly basis for leaves, including sick time, emergency leave, and parental leave.

The CBA further outlines the hours and workload for unit members, including compensation for teaching "overload" courses, or coursework beyond the established workload. Ex. A, at Art. XI (p. 64-101). Overload compensation is in addition to faculty's regular annual base salary. *Id.* at Art. II.1.a (p. 8).

Articles XVI and XVII are the grievance and arbitration provisions of the CBA. Article XVI defines a grievance as "an allegation or complaint presented on behalf of a particular faculty member or members." Ex. A, Art. XVI. A (p. 164). The CBA sets out a three-step grievance procedure that must be followed in the event the Union believes the CBA has been violated,

misinterpreted, or misapplied. *Id.* If the outcome of the grievance process is unsatisfactory to the Union, the CBA authorizes the union to bring that dispute to arbitration with the Labor Relations Connection or any other mutually acceptable arbitrator. *Id.* at Art. XVII (p. 171).

## II. LEGAL STANDARD

In order to survive a motion to dismiss, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Bare allegations and legal conclusions and/or a "formulaic recitation of a cause of action's elements will not do. *Id*. Furthermore, although a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of [their] entitlement to relief requires more than labels and conclusions." *Id.* (internal quotations omitted). That is, while a plaintiff is entitled to all reasonable inferences from the facts alleged, his legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Rather, "[w]hat is required at the pleading stage are factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement... that the plain statement possesses enough heft to show that the pleader is entitled to relief." *Id.*

## III. ARGUMENT

### A. Plaintiffs' Wage Act Claims on Behalf of Putative Classes of Lecturers and Senior Lecturers and Full-Time Faculty Teaching Overload Courses Are Preempted by Federal Labor Law.

Plaintiffs' Wage Act claims on behalf of putative classes of Lecturers and Senior Lecturers and full-time faculty teaching overload courses are preempted by federal labor law. Section 301 provides for complete preemption of disputes between employers, unions, and employees that are parties to a collective bargaining agreement. 29 U.S.C. § 185(a). Because the country's labor

policies are national in scope, "in enacting 301, Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987) (*quoting Int'l Bhd. of Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)). As a result, "a suit . . . alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (*citing Lucas Flour Co.*, 369 U.S. at 103-104). Section 301 preemption is rooted in the belief that the interpretation and application of CBAs "must be subject to a uniform body of law." *See Clee v. MVM, Inc.*, 91 F. Supp. 3d 54, 59 (D. Mass. 2015) (citation omitted). If state law governed the interpretation of CBAs, then "parties would be uncertain as to what they were binding themselves to . . . and disputes as to the nature of [CBAs] would proliferate." *Id.* The preemptive effect of Section 301 has broad application in employment-related matters, including wage claims under state law. *See Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) (affirming dismissal plaintiffs' Wage Act claims for unpaid wages for meal breaks as preempted by Section 301).[7]

State law claims are preempted under Section 301 where they are "inextricably intertwined" with the CBA and more than "mere consultation" of the CBA is required to resolve them. *See Cavallaro*, 678 F.3d at 7; *Allis-Chalmers*, 471 U.S. at 220 ("when resolution of a state-

---

[7] *See also Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (affirming dismissal of Wage Act claims relating to unpaid wages for reporting to a different location as requiring interpretation of relevant CBA); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12-16 (1st Cir. 2001) (state law claim for compensation for "standby time" pursuant to a collective bargaining agreement preempted by Section 301 as "it requires CBA interpretation and consideration of industry practices"); *Austin v. Ken's Foods, Inc.*, 2025 WL 889438, at *5 (D. Mass. Mar. 21, 2025) (dismissing plaintiffs' claims under the Wage Act as preempted); *Baker v. Kingsley*, 387 F.3d 649, 657-659 (7th Cir. 2004) (question of liability for late payment of wages under state wage statute preempted by Section 301); *Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 108 (4th Cir. 2014) (dismissing as preempted under Section 301 where state claims turned on the application and construction of the CBA).

law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law") (internal citation omitted).

> [Section 301] preempts a state law claim, whether founded upon the state's positive or common law, if a court, in passing upon the claim, would be required to interpret the collective bargaining agreement. In practice, this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.

*Flibotte v. Pennsylvania Truck Lines, Inc.*, 131, F.3d 21, 26 (1st Cir. 1997), *cert. denied*, 118 S. Ct. 1806 (1998) (internal citation omitted). A claim is "intertwined" with the CBA where "its resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 55 (1st Cir. 2011). A state law claim cannot escape LMRA preemption unless "it requires no more than 'bare' consultation of a CBA, without dispute as to 'the meaning of [any] contract terms.'" *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (*quoting Livada v. Bradshaw*, 512 U.S. 107, 124 (1994)). "If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep." *Rose*, 1 F.4th at 61.

Plaintiffs' Wage Act claims on behalf of the Lecturers, Senior Lecturers, and full-time faculty are premised on their allegation that they and the putative class members did not elect to be paid monthly. The answer to that question indisputably requires this Court to interpret the CBA. The CBA expressly states that "[f]ull-time faculty members and part-time faculty members with professorial rank . . . shall receive their base salaries in twelve equal installments on a one-month in advance basis." Ex. A, Art. XII. M (p. 115). In order to determine whether Plaintiffs and putative class members elected to be paid monthly and were timely paid, the Court will have to analyze and interpret this provision of the CBA. The CBA also contains several other provisions

in which the Union agreed that faculty would be paid on a monthly basis. *See* Ex. A at Articles VIII.D; X.I.3; X.L; X.N; XII.M. There is simply no way for the Court to answer the question of whether Plaintiffs and putative class members elected to be paid monthly without interpreting multiple provisions of the CBA. In fact, Plaintiffs' own Complaint is replete with references to the CBA. For example, with respect to the putative class of Lecturers, Plaintiffs allege that Lecturers "are not one of the ranks listed in Article XII.A of the CBA [and therefore] [Article XII.M] does not apply to Lecturers." Compl. ¶ 32. This allegation alone demonstrates that the Court would be required to interpret the CBA to simply determine whether Lecturers are part of the bargaining unit. But that question should be resolved by an arbitrator pursuant to the grievance and arbitration provisions of the CBA.

Similarly, Plaintiffs also acknowledge that overload compensation is paid pursuant to the provisions of the CBA. Compl. ¶ 33. Thus, whether Senior Lecturers or full-time faculty members agreed to be paid monthly for overload courses is exactly the type of question that is "inextricably intertwined" with interpretation of the CBA. *See Cavallaro*, 678 F.3d at 8; *see also Davis v. Ne. Ctr. for Youth & Fams., Inc.*, 662 F. Supp. 3d 151, 156 (D. Mass. Mar. 23, 2023) (CBA established pay provisions for leave and overtime, and therefore Wage Act claims related to unpaid leave and overtime preempted); *Taylor*, 693 F. Supp. 3d at 96 (CBA established rate of pay and shift differentials, and therefore related Wage Act claim preempted); *Mitchell v. Globe Newspaper Co.*, 602 F. Supp. 2d 258, 261-62 (D. Mass. 2009) (CBA established vacation pay provision, and therefore Wage Act claim related to unpaid vacation time preempted).

There is no question that Plaintiffs' claims on behalf of Lecturers and Senior Lecturers and full-time faculty teaching overload contracts require interpretation of the CBA. Plaintiffs' claims on behalf of these two putative classes are preempted by Section 301 and must be dismissed. *See*

*White v. C. Carney Recycling Solutions, LLC*, 548 F. Supp. 3d 272, 274 (D. Mass. 2021) (finding complete preemption under the LMRA and granting defendant's motion to dismiss plaintiffs' Massachusetts statutory and common law claims for failure to pay overtime and wages for lunch breaks where their claims "require for their resolution analysis and interpretation of the CBA").

### B. **Plaintiff's Claims in this Case Cannot be Treated as Section 301 Claims.**

Plaintiffs' Complaint cannot be read as asserting a Section 301 claim because Plaintiffs have not exhausted the CBA's grievance and arbitration procedures. Before an employee may bring a suit against her employer under Section 301, she must attempt to exhaust any exclusive grievance and arbitration procedures established by the CBA. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). To allow otherwise would "deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Id.* at 653. Accordingly, where an individual's state law claim is preempted by federal law and may only be brought as a Section 301 claim under the LMRA, it may be dismissed where the employee failed to timely exhaust the grievance and arbitration procedures set forth in the CBA. *See White*, 548 F. Supp. 3d at 274 ("'Plaintiffs' failure to exhaust available grievance procedures under the CBA precludes this Court from treating those claims as having been brought under § 301, and dismissal is thus required.'") (*quoting DiGiantommaso v. Globe Newspaper Co.*, 632 F. Supp. 2d 85, 90 (D. Mass. 2009)); *Rose*, 2019 WL 1237555, at *1 (holding that adjudication of plaintiff's claims to recover unpaid wages required interpretation of the CBA and that "[d]ismissal is appropriate if plaintiffs have not previously raised the claims through the grievance procedure"), *aff'd* 1 F.4th 56 (1st Cir. 2021).

Here, Articles XVI and XVII of the CBA contain a detailed grievance and arbitration procedure. *See* Ex. A, Arts. XVI, XVII (pgs. 164-171). The CBA's definition of a grievance broadly includes "an allegation or complaint presented on behalf of a particular faculty member or

9

members" and sets forth a detailed three-step grievance process, followed by arbitration should either the College or the Union be dissatisfied with the outcome of the grievance process. *Id.* Plaintiffs never exhausted this procedure. As such, they are precluded from bringing a claim under Section 301 of the LMRA. *See Allis-Chalmers Corp.*, 471 U.S. at 220-21 (holding that the "complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement or dismissed as pre-empted by § 301") (internal citation omitted); *White*, 548 F. Supp. 3d at 274 (granting employer's motion to dismiss plaintiffs' Massachusetts statutory and common law claims on Section 301 preemption grounds where "[p]laintiffs do not allege that they followed the CBA's grievance process, nor have they refuted defendant's allegation that they did not do so").

    **C.** **As Plaintiffs' Exclusive Bargaining Representative, the Union Could Elect Monthly Pay on Plaintiffs' Behalf.**

To the extent Plaintiffs contend that the Union did not have the right to elect monthly pay on their behalf, that is foreclosed by federal labor law. The Union is their exclusive bargaining representative. Ex. A. Art. I ("The College recognizes the Curry AAUP as the exclusive agent for the purpose of representing the faculty employed at the College for all matters pertaining to wages, hours, standards of productivity and performance, and other terms and conditions of employment."); *see also* 29 U.S.C. § 159; *see also J. I. Case Co. v. NLRB*, 321 U.S. 332, 339 (1944) (explaining that once a union is voted in by the employees, "the majority rules" and individual employees cannot contract out for themselves from the "the collective result"). The Supreme Court has made clear that the Union was and is free to bargain over statutory rights. *See Metro. Edison Co. v. NLRB*, 460 U.S. 693, 705 (1983) ("a union may waive a member's statutorily protected rights"); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258, 260 (2009) (stating that the "NLRA provided the Union and the [employer] with the statutory authority to collectively

bargain" over employees' statutory claims). Thus, the Union was free to elect through bargaining a monthly pay frequency on Plaintiffs' behalf.

While federal law controls here, Massachusetts courts have explicitly held that labor unions have the power to negotiate the Wage Act's timing of pay provisions. *See Parris v. Sheriff of Suffolk County*, 93 Mass. App. Ct. 864, 865 (2018) ("We conclude that the unions had the authority, through collective bargaining, to exercise the employees' election request that payment of overtime wages be made under a schedule that differs from what the Wage Act provides. . . . "). In *Parris*, the court examined a similar provision of the Wage Act, which allows public employees to request in writing to be paid in a different manner from the schedule set forth in the Wage Act. *Id.* at 865. In holding that the union could exercise the employees' election regarding the timing of payment of overtime, the court recognized that "[a]n interpretation of the Wage Act requiring individual employees personally to make this election would create conflict with . . . labor relations law." *Id*. at 867-868. As "the exclusive representative of all the employees . . . for the purpose of collective bargaining," unions "are empowered to act on the employees' behalf." *Id.* at 868. While the Appeals Court was referring to state labor law, its rationale applies equally here. The Union could and did elect on behalf of Lecturers, Senior Lecturers, and full-time faculty to be paid monthly.

## IV. CONCLUSION

For the foregoing reasons, the College requests this Court dismiss any and all claims and allegations related to a putative class action on behalf of 1) Lecturers and 2) Senior Lecturers and full-time faculty teaching overload courses and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

CURRY COLLEGE,

By its Attorneys,

 */s/ Daniel R. Fishman*
Gregory A. Manousos (BBO #631455)
Catherine M. Scott (BBO #691867)
Daniel R. Fishman (BBO# 696748)
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109
(617) 523-6666
(617) 367-3125 (Fax)
gmanousos@morganbrown.com
cscott@morganbrown.com
dfishman@morganbrown.com

Robert A. Fisher (BBO # 643797)
Barry J. Miller (BBO# 661596)
Molly C. Mooney (BBO# 687812)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
rfisher@seyfarth.com
bmiller@seyfarth.com
mmooney@seyfarth.com

Dated: May 6, 2025

**CERTIFICATE OF SERVICE**

I, Daniel R. Fishman, hereby certify that on May 6, 2025, I have caused a true and correct copy of the foregoing to be served via ECF on:

Fran L. Rudich, Esq.
Ari Cherniak, Esq.
HammondLaw, P.C.
1201 Pacific Avenue, Suite 600
Tacoma, WA 98402
Email: flrmarks@gmail.com
Email: acherniak@hammondlawpc.com

Julian Hammond, Esq.
HammondLaw, P.C.
7366 Wexford Terrace
Boca Raton, FL 33433
Email: jhammond@hammondlawpc.com

Polina Brandler, Esq.
HammondLaw, P.C.
716 West 232 Street
Bronx, NY 10463
Email: pbrandler@hammondlawpc.com

Barry J. Miller, Esq.
Molly Clayton Mooney, Esq.
Robert A. Fisher, Esq.
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
Email: bmiller@seyfarth.com
Email: mmooney@seyfarth.com
Email: rfisher@seyfarth.com

                                         */s/ Daniel R. Fishman*
                                         Daniel R. Fishman