IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY MACINTYRE and KEITH FITTS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CURRY COLLEGE<br><br>Defendant. | Case No. 1:25-cv-10585-NMG |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiffs have been employed by Defendant Curry College (the "College" or "Defendant") as an Associate Professor and as an Associate Lecturer and Lecturer, respectively, during the putative Class Period. ECF No. 21, First Amended Class Action Complaint ("FAC") ¶¶ 10-11. They bring this class action because Defendant violated the Massachusetts Wage Act, M.G.L. ch. 149 § 148, by failing to pay employees on a weekly or bi-weekly basis over multiple years. *Id.* ¶¶ 1–2. They seek to represent three putative classes of similarly-situated employees who were paid in monthly installments for their work for Defendant. *Id.* ¶ 36.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for partial dismissal for failure to state a claim. *See* ECF Nos. 22, 23. Defendant argues that Plaintiffs' state-

law wage claim on behalf of two of the putative classes – the Lecturer Class[1] and the Overload Class[2] – is preempted by § 301 of the Labor Management Relations Act ("LMRA") because the terms and conditions of those putative classes' employment are set by a collective-bargaining agreement (the "CBA") between Defendant and the Curry College Chapter of the American Association of University Professors (the "Union" or the "AAUP").[3] Recognizing that this suit does *not* allege a violation of that CBA, *see* ECF No. 23, Def's Memo. of Law in Support of Partial Motion to Dismiss ("Memo.") at p. 7, Defendant argues that Plaintiffs' claim is nonetheless preempted, with respect to those two putative classes, because resolution of that claim will, purportedly, require interpretation of the CBA to determine whether Plaintiffs and Class Members elected to be paid monthly. It plainly will not. Defendant points to no provision of the CBA that *could* be interpreted to answer whether members of either class elected to be paid monthly, or any other question pertinent to Plaintiffs' wage claim. Defendant's motion should be denied.

## BACKGROUND FACTS, PLAINTIFFS' CLAIM, AND THE CBA

Plaintiff Keith Fitts has been employed by the Defendant since approximately fall 2020 – as an Associate Lecturer from approximately August 2020 through to the beginning of 2023, and as a Lecturer since approximately August 2023. FAC ¶ 11. During his employment as an Associate Lecturer, Plaintiff Fitts and other "[p]art-time faculty employed as . . . Lecturers [have been]

---

[1] The Lecturer Class is defined as: "All individuals employed at Curry College as Lecturers during the Class Period." FAC, ¶ 36.
[2] The Overload Class is defined as: "All individuals employed as Senior Lecturers or as full-time faculty and who taught overload courses during the Class Period." FAC, ¶ 36.
[3] Defendant concedes that Plaintiffs' state-law wage claim on behalf of the first putative class – "All individuals employed at Curry College as Associate Lecturers during the Class Period ("Associate Lecturer Class")" – is not preempted. See ECF No. 23, Def's Memo. of Law in Support of Partial Motion to Dismiss, p. 2, fn. 3.

employed pursuant to one semester contracts and [have been] . . . paid in monthly installments (e.g., four monthly installments for regular fall and spring semesters)." *Id.*, ¶ 18.

Plaintiff Emily MacIntyre was employed by Defendant Curry College ("Curry" or "Defendant") as an Associate Professor from approximately August 2014 until December 2022. FAC ¶ 10. During that time, Plaintiff MacIntyre taught an overload course in the Fall 2022 semester. *Id.* Full-time faculty, including Associate Professors, are "typically paid over 12 months." *Id.*, ¶ 17. However, "additional compensation for courses taught under overload contracts is not paid over 12 months. Rather, during the regular fall and spring semesters, for example, overload compensation is paid in four monthly installments." *Id.*

Thus, throughout the Class Period, Defendant "maintained a policy and/or practice of paying earnings to . . . Lecturers as well as compensation for overload courses to Senior Lecturers and full-time faculty teaching overload courses, on the first of each month for the work performed during the previous month or even the month before that." FAC ¶ 19. To be clear, at no time did Plaintiff Fitts and members of the Lecturer Class elect to be paid on a monthly basis, and, yet, they were paid in four equal, monthly, installments for their work performed during the respective Spring or Fall semesters in which they worked. *See id.*, ¶¶ 18, 23, 26. Similarly, at no time did Plaintiff MacIntyre and members of the Overload Class elect to be paid on a monthly basis for their time spent teaching overload classes, and, yet, they were also paid in four equal, monthly, installments for their work performed teaching overload classes during the respective Spring or Fall semesters in which they worked. *See id.*, ¶¶ 17, 21, 26.

Being paid monthly contravenes Massachusetts law. Under the Wage Act ch. 149, § 148, Curry was required to pay Class Members weekly or bi-weekly, "'within six days of the termination of the pay period during which the wages were earned.'" FAC, ¶¶ 1–2 (quoting the

Act). Curry's practice of paying Class Members in four monthly installments, with payments made "on the first of the month for the work performed during the previous month or even the month before that," resulted in wages earned in the first half of each month being paid late and the withholding of millions of dollars in wages, causing harm to Plaintiffs and other members of all three putative Classes. *Id.*, ¶¶ 4-6.

Defendant contends that the terms of employment for members of both the Lecturer Class and the Overload Class were determined by the CBA between Defendant and the Union, and, therefore, that Plaintiffs' claim "turns on rights and obligations contained" in the CBA. ECF No. 22, Def's Partial Motion to Dismiss ("Mot.") at p. 1. Of relevance to its preemption argument, Curry relies on Section M of Article XII of the CBA, which is entitled "Salary Payments for Full-Time Faculty Members," and which, explicitly addressing base salaries for "[f]ull-time faculty members and part-time faculty members with professorial rank listed in Article XII.A," provides:

> Full-time faculty members and part-time faculty members with professorial rank listed in Article XII.A. shall receive their base salaries in twelve equal monthly installments on a one-month in advance basis; e.g., compensation for any pay period shall be paid on the first business day of the month for which the unit member is being paid.

CBA,[4] Art. XII, § M. Defendant argues this provision requires interpretation and, thus, mandates LMRA preemption. However, Lecturers and Senior Lecturers are listed in Article XII, § B, not Article XII, § A, so the provision relied on by Defendant simply does not apply to the Lecturer Class or to Senior Lecturers who are part of the Overload Class. Moreover, Defendant accepts that

---

[4] References to the CBA are to Exhibit A (ECF No. 23-1) to Defendant's Memo. Defendant asserts that this CBA, as extended, was in effect from June 1, 2021, through May 31, 2024. *See* Memo. at p. 2, fn. 2. And the subsequent CBA dated June 1, 2024, to May 31, 2027, is Exhibit D (ECF No. 23-4) to Defendant's Memo. The provisions relied upon by Defendant are not materially different in this latter CBA, which covers part of the Class Period, thus, for simplicity and convenience, Plaintiffs refer only to Exhibit A (ECF No. 23-1).

"[o]verload compensation is <u>in addition to faculty's regular annual base salary</u>," Memo. at p. 4 (citing Art.II.1.a). Thus, the provision relied on by Defendant, which addresses only "base salaries," <u>does not address</u> wages paid to full-time faculty who are part of the Overload Class for teaching overload classes; the very wages which are the subject of Plaintiffs' wage claim for the Overload Class. Finally, the provision cited addresses the payment of base salaries "in twelve equal monthly installments on a one-month in advance basis." CBA, Art. XII, § M. But, Plaintiffs and Class Members were paid in four equal monthly installments for their work in each respective semester, not twelve. *See* FAC, ¶ 17 ("additional compensation for courses taught under overload contracts is not paid over 12 months. Rather, during the regular fall and spring semesters, for example, overload compensation is paid in four monthly installments."); *Id.* ¶ 18 (Lecturer Class paid in "four monthly installments for regular fall and spring semesters."). And, Plaintiffs and Class Members were not paid <u>in advance</u> for their work in each respective semester. Rather, for the work covered by their wage claims, members of both the Lecturer Class and the Overload Class were paid "on the first of each month for the work performed during the previous month or even the month before that." *Id.* ¶ 19. Thus, the provision relied upon by Defendant is both <u>inapplicable</u> to the wage claims of the Lecturer Class and the Overload Class, <u>and was not, in fact, applied by Defendant</u> to the actual payment of the wages covered by their claims in the instant case.

    Defendant cites other provisions in the CBA which address certain deductions and non-wage payments applicable to bargaining unit members. *See* Memo. at p. 4 (citing CBA, Art. VIII.D, Article X.I.3, Article X.L.1, and Article X.N). None of these provisions addresses the monthly payment of wages to the Lecturer Class or the monthly payment of compensation for overload classes to the Overload Class.

Finally, Defendant asserts that the CBA "further outlines the hours and workload for unit members, including compensation for teaching 'overload' courses, or coursework beyond the established workload." Memo. at p. 4 (citing CBA, Art. XI, Art. II.1.a). Defendant does not contend, however, that this provision addresses the monthly payment of wages to the Lecturer Class or the monthly payment of compensation for overload classes to the Overload Class.

Curry argues in the alternative that Plaintiffs are precluded from bringing a claim under § 301 because they have not exhausted the grievance and arbitration provisions found at Article XVI and XVII of the CBA, respectively. The grievance procedure set out in Article XVI defines a grievance as "a written allegation or complaint presented by the AAUP claiming that there has been a violation, misinterpretation, or misapplication of <u>the terms and conditions of this Agreement</u>." CBA, Art. XVI.A (emphasis added). The arbitration procedure provides for the arbitration of <u>grievances</u> which have not been resolved during the grievance process. *See* CBA, Art. XVII.

## ARGUMENT

### I. Applicable Legal Standards

Section 301 of the LMRA provides federal court jurisdiction over controversies involving collective-bargaining agreements, and "also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 403 (1988) (*quoting Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). *See* 29 U.S.C. § 185(a). In the interest of promoting a "smooth resolution of labor-management disputes" and to ensure "uniformity in labor law across jurisdictions," section 301 preempts state-law claims if resolution of the dispute requires the <u>interpretation</u> of a CBA. *Austin v. Ken's Foods, Inc.*, No. 4:24-CV-40040-MRG, --- F.Supp.3d ---, 2025 WL 889438, at *3 (D.

Mass. Mar. 21, 2025) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985); *Lingle*, 486 U.S. at 405–6). However, despite Congress' intent to establish uniformity in resolving labor law disputes across jurisdictions, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211–12. Nor is it true that Congress, "in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation." *Id.* In other words, Congress didn't intend § 301 to extinguish state-law rights based merely on the fact that parties to a dispute have between them a CBA. Rather, section 301 only preempts state-law claims that are "'*substantially* dependent upon analysis of the terms of an agreement made between the parties in a labor contract,' where such claims are 'inextricably intertwined with consideration of the terms of the [CBA],' and [where] more than 'mere consultation' of the CBA is required to resolve the state-law claims.'" *Austin*, 2025 WL 889438, at *3 (quoting *Allis-Chalmers*, 471 U.S. at 220) (citing *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir. 2012); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001)) (emphasis added). A state-law claim is not preempted by the LMRA "if it requires no more than 'bare' consultation of a CBA," and if there is no "dispute as to 'the meaning of any *contract terms*.'" *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)) (emphasis added); *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 18 (1st Cir. 2018) ("[S]tate-law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, "should not be extinguished.") (quoting *Adames*, 258 F.3d at 12). Put simply, as in the instant case, a dispute between parties to a CBA cannot implicate Congress' desire for uniformity in labor law when the dispute requires no actual interpretation or analysis of any terms contained in the CBA.

### II. Analysis

#### a. Defendant concedes that the putative Associate Lecturer Class is not covered by the CBA and their claim under the Wage Act is not preempted

Defendant concedes that the wage claim with respect to the Associate Lecturer Class cannot be preempted because Associate Lecturers are not covered by the CBA. For that reason, Defendant intends to answer the claim brought on behalf of the putative Associate Lecturer Class after the Court decides the instant motion. Mot., p. 2, fn. 1.

#### b. Resolving this dispute will require no interpretation of any term or provision of the CBA

##### i. *The Lecturer Class*

Defendant's bald claim is that "[i]n order to determine whether Plaintiffs and putative class members elected to be paid monthly and were timely paid, the Court will have to analyze and interpret [Article XII, § M] of the CBA." Memo, p. 7. Yet, the application of that provision is clearly and explicitly limited, by its own terms, to "[f]ull-time faculty members and part-time faculty members with professorial rank listed in Article XII.A." CBA, Art. XII, § M (emphasis added). In this regard, Defendant notably repeatedly omits a critical limiting clause from the CBA's text; Defendant quotes Article XII, § M three times, and, yet, each time replaces the reference to Article XII.A with ellipses. This reference to Article XII, § A, is hardly the kind of superfluous language that is appropriately omitted. And, a passing look at Article XII, § A, confirms that Lecturers are not listed in that Article. Instead, they are listed in Article XII, § B. Thus, the Court need only look briefly to the CBA to categorically confirm that the Lecturer Class did not elect to be paid monthly.

Defendant erroneously asserts that reaching this conclusion would require the Court to "interpret the CBA to simply determine whether Lecturers are part of the bargaining unit." Not so.

To be clear, Plaintiffs do not claim that Lecturers are not part of the bargaining unit. Rather, they make the simple and irrefutable related claims, that (i) Article XII, § M only applies to those in job classifications listed in Article XII, § A, and that (ii) Lecturers are not listed in the latter section. The fact that Lecturers are not listed in Article XII, § A is ascertainable in mere seconds by simply looking at that section, in which the only job classifications listed – and unambiguously so – are Instructor, Assistant Professor, Associate Professor, and Professor. *See* CBA, Art. XII, § A.

There is simply no authority for the proposition that simply looking at two unambiguous provisions in the CBA constitutes "interpretation" such that it could justify a finding of preemption under the LMRA. To the contrary, this is the archetypal case where the Court need "merely consult" the CBA in order to determine that Plaintiff Fitts and the Lecturer class did not elect to be paid on a monthly basis. *See Austin*, 2025 WL 889438, at *3 (citing *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir. 2012); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001)). Revealingly, Defendant does not suggest an alternative reading of Article XII, § M, which would make it applicable to members of the Lecturer Class. This is a tacit admission that no interpretation of the CBA is required.

Plaintiffs further note that the provision relied upon by Defendant addresses the payment of base salaries "in twelve equal monthly installments on a one-month in advance basis." CBA, Art. XII, § M. But, members of the Lecturer Class were, in fact, paid in four equal monthly installments for their work in each respective semester, not twelve. *See* FAC, ¶ 18 (Lecturer Class paid in "four monthly installments for regular fall and spring semesters."). And, they were not paid in advance for their work in each respective semester. Rather, they were paid "on the first of each month for the work performed during the previous month or even the month before that." *Id*. ¶ 19.

Thus, Defendant, through its own conduct, has acknowledged that this provision does not apply to the payment of wages to the Lecturer Class.

Defendant attempts to muddy the water by pointing to "other provisions in which the Union agreed that faculty would be paid on a monthly basis." Memo., at pp. 4, 7-8 (citing CBA, Articles VIII.D, X.I.3, X.L.I, and X.N). But, Defendant makes no claim that these provisions address the payment of wages, in general, to Lecturer Class Members. Rather, they address specific payments and/or deductions. Article VIII, § D, addresses the payment of "[d]ues or agency fees," Article X, § I.3, addresses reimbursement for items such as "parking fees" and "travel costs," Article X, § L.I, addresses Defendant's payment of the full cost of long-term disability insurance for full-time faculty and Senior Lecturers with long-term disability benefits based on the unit member's regular monthly salary, and Article X, § N. addresses payments for leaves, including sick time, emergency leave, and parental leave. At most, these provisions stand for the irrelevant proposition that the covered unit members can, for example, receive reimbursement for their parking fees, or receive payments for parental leave, on a monthly basis. With respect to the wage claim raised in the FAC, however, these are all red herrings. Defendant offers no explanation – nor could it – for how any of these provisions could be interpreted to constitute an election by members of the Lecturer Class to be paid their wages on a monthly basis.

This Court can simply look at the CBA to determine that the provision Defendant suggests constitutes an election by the Lecturer Class to be paid on a monthly basis does not apply to that Class. There is no "interpretation" required and, respectfully, this Court cannot reasonably find LMRA preemption.

      ii. *The Overload Class*

With respect to the Overload Class, Defendant notes that Plaintiffs "acknowledge that overload compensation is paid pursuant to provision of the CBA," and then simply states, "[t]hus, whether Senior Lecturers or full-time faculty members agreed to be paid monthly for overload courses is exactly the type of question that is 'inextricably intertwined' with interpretation of the CBA." Memo. at 8. But this conclusion does not follow simply because overload compensation is addressed by the CBA. The issue is whether the Court needs to <u>interpret</u> the CBA in order to determine whether members of the Overload Class elected to receive their compensation for teaching overload classes on a monthly basis. It categorically does not.

Senior Lecturers are listed in Article XII, § B (alongside Lecturers) and are, thus, not listed in Article XII, § A, and not covered in any respect by Article XII, § M. Thus, for the reasons given above, the wage claims of Senior Lecturers in the Overload Class cannot be preempted.

Unlike the Lecturer Class, however, Article XII, § M, does address the payment of some compensation to some members of the Overload Class who are employed in job classifications listed in Article XII, § A. Yet, while § M applies to them, it does not address compensation for teaching overload courses. Indeed, Defendant accepts that "[o]verload compensation is <u>in addition to faculty's regular annual base salary</u>," Memo. at p. 4 (citing Art.II.1.a). And, Article XII, § M, provides as follows:

> Full-time faculty members and part-time faculty members with professorial rank listed in Article XII.A. shall receive their <u>base salaries</u> in twelve equal monthly installments on a one-month in advance basis; e.g., compensation for any pay period shall be paid on the first business day of the month for which the unit member is being paid.

CBA, Art. XII, § M (emphasis added). Thus, § M addresses only the payment of <u>base salaries</u>; it does not address the payment of wages for overload courses to those members of the Overload Class to whom it applies. It cannot, then, constitute an election by Overload Class members to

receive their pay for teaching overload courses on a monthly basis since it does not address pay for teaching overload courses.

In reaching this conclusion, the Court need only look at Article XII, § M and Article II, § II.1.a), which provides "[t]he base salary is the annual salary of a full-time faculty member <u>without any additional payments</u>, such additional teaching assignments, <u>overloads</u>, winter or summer administrative payments, etc." CBA, Art. II, § II.1.a) (emphasis added). Briefly reviewing these unambiguous provisions will quickly confirm to the Court that while Article XII, § M, applies to some members of the Overload Class, it clearly and unambiguously does not apply to the payment of wages for overload courses to anyone, including those members of the Overload Class to which it applies.

Moreover, Plaintiffs note that, as explained above for the Lecturer Class, members of the Overload Class were not, in fact, paid in "twelve equal monthly installments" or paid "on a one-month in advance basis." *See* FAC, ¶ 17 ("additional compensation for courses taught under overload contracts is not paid over 12 months. Rather, during the regular fall and spring semesters, for example, overload compensation is paid in four monthly installments."); *Id.* ¶ 19 (Overload Class not paid <u>in advance</u> for their work in each respective semester; rather, for their work teaching overload classes they were paid "on the first of each month for the work performed during the previous month or even the month before that."). Thus, Defendant, through its own conduct, has acknowledged that this provision does not apply to the payment of wages for overload classes to the Overload Class.

Rather than accept this conclusion, Defendant suggests that simply because the payment of overload compensation is addressed by the CBA, this Court should find preemption. But, there is no authority for this position, and the cases cited by Curry offer it no support. In *Cavallaro*, the

court found plaintiffs' claim for unpaid wages "for time spent working through meal breaks, before and after work, and during training sessions" to be preempted; this conclusion rested on the court's finding that whether compensation was owed for various activities would likely depend on the interpretation of various terms of the CBA, including, as relevant to training, whether "the employee . . . made a 'timely' request to attend" and, as relevant to mealtimes, "whether a nurse remained in the 'patient care area.'" *Cavallaro v. UMass Mem'l Healthcare, Inc.*, *supra*, 678 F.3d 1, at 8 (finding that "whether there are wages owed thus will require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA."). Similarly, in *Davis v. Ne. Ctr. for Youth & Fams., Inc.*, in which the plaintiff brought a claim for unpaid overtime, the court, in finding preemption, identified numerous specific provisions in the relevant CBA which could affect the calculation of overtime and which would need to be analyzed "to determine whether Plaintiff was shortchanged overtime pay, as she asserts." 662 F. Supp. 3d 151, 157 (D. Mass. 2023). Likewise, in *Taylor v. Ukg, Inc.*, also facing a claim for unpaid wages, the court, relying on *Cavallaro*, found that "[i]t is the applicable CBAs that provide for what work is compensated and which rate of pay applies to such work (e.g., whether work qualifies for a shift differential), such that the amount of wages owed may turn on specific provisions in the CBAs." *Taylor v. Ukg, Inc.*, 693 F. Supp. 3d 87, 96 (D. Mass. 2023). And, in *Mitchell v. Glove Newspaper Co.*, the court found preemption where plaintiffs alleged that they were not compensated fully for earned vacation pay and the parties "[did] not agree over the proper rate of vacation pay under the CBA, which necessarily requires interpretation of that agreement." 602 F. Supp. 2d 258, 261 (D. Mass. 2009). In each of the cases cited by Defendant, then, the amount of wages owed by each respective defendant was at issue, either because the appropriate rate of pay or whether certain time was compensable was in dispute, and resolution of that issue required interpretation of the


relevant CBA because the obligation to pay a certain amount of wages or to pay for certain time was dependent on that CBA.

In the instant case, in contrast, there is no dispute over the amount of wages owed to Class Members, and Plaintiffs do not claim that any wages were, ultimately, unpaid. Rather, the claim is that Class Members were paid untimely. The obligation to pay wages to Class Members at certain times is a function of state law and, in analogous situations, courts have routinely found such claims not to be preempted by the CBA. *See Lividas v. Bradshaw*, 512 U.S. 107, 124-25 (1994) (no preemption where wages were paid and claims concern only whether wages were timely paid); *Taylor v. Ukg, Inc.*, 693 F. Supp. 3d, at 95 ("Claims for which 'no dispute exist[s] about the amount of wages owed,' are not preempted." (quoting *Cavallaro*, 678 F.3d at 8)).

In sum, Curry has identified no term or provision of the CBA that requires analysis or interpretation to resolve Plaintiffs' claims. Much less is this a case where Plaintiffs' and the Overload Class's claim depends "substantially" "upon analysis of the terms" of the CBA. Although Defendant contends otherwise, only a quick consultation of the CBA is needed to see that the CBA plainly and unambiguously does not purport to elect monthly payment for the Overload Class for their work teaching overload courses. Accordingly, the LMRA simply does not mandate preemption of Plaintiff's claim. *E.g.*, *Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 328 (1st Cir. 2016) (declining to find claim preempted when liability pursuant to a state law existed "entirely independent of any CBA terms"); *see id.* ("'no reason to hold [a] state-law claim defeated by § 301' . . . even if the need [arises] to 'look to' the CBA" to do things like calculate an employee's hourly rate for the purpose of calculating damages) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (Supreme Court precedent "makes plain . . . that when liability is governed by independent state law, the mere need to 'look to' the collective-

bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301")).

### c. Plaintiffs were not required to exhaust the CBA's grievance and arbitration procedures

Defendant argues that Plaintiffs' complaint cannot be read to assert a § 301 claim because Plaintiffs "have not exhausted the CBA's grievance and arbitration procedures." Memo. at 9-10. Of course, Plaintiffs do not seek to bring a contract claim under § 301. Their rights arise from a state statute, not the CBA. And the CBA's grievance procedure is triggered only by "a violation, misinterpretation, or misapplication" of the agreement. CBA, Art. XVI. Because Plaintiffs do not allege any such violation, exhaustion is neither required nor available.

Defendant asserts that "[t]he CBA's definition of a grievance broadly includes 'an allegation or complaint presented on behalf of a particular faculty member or members.'" Memo. at 9-10. This is misleading and inaccurate. In fact, the quotation relied upon by Defendant comes from the definition of "Individual Grievance:" "An individual grievance is an allegation or complaint presented on behalf of a particular faculty member or members." CBA, Art. XVI, § A.1. This is distinct from a "Policy Grievance," which is defined as "one which affects members or groups of members in general . . . ." CBA, Art. XVI, § A.2. Thus, these definitions are intended to describe the two different types of grievance. The definition of a grievance, itself, is given separately in the first sentence of the Article:

> **Article XVI: Grievances**
>
> **A. DEFINITIONS**
>
> A grievance is a written allegation or complaint presented by the AAUP claiming that there has been *a violation, misinterpretation, or misapplication of the terms and conditions of this Agreement*.

CBA, Art. XVI (emphasis added). Thus, to the extent Defendant is suggesting that a grievance can claim, allege, or address, anything other than "a violation, misinterpretation, or misapplication of the terms and conditions of [the CBA]," it is incorrect.

To be clear, liability in this matter turns on state law, entirely independent of anything in the CBA: This dispute does not concern a claimed violation, misinterpretation, or misapplication of any term or condition of the agreement. Resort to the grievance and arbitration procedures in the CBA is plainly not mandated here; indeed, it is impermissible under the terms of the CBA. The dispute concerns statutory rights that are independent of the CBA, and it is "inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," *Allis-Chalmers*, 471 U.S. at 212. Here, it would be inconsistent for Plaintiffs to have to exhaust grievance procedures outlined in the CBA when they are pursuing statutory rights that are independent of the CBA. And it is most telling that their claim could not be brought as a grievance because it does not concern the interpretation, application, or a claimed violation of the CBA. This further supports a finding that Plaintiffs' claim is not preempted.

## CONCLUSION

Curry fails to point to any provision or term or language in the CBA that requires interpretation or analysis. The very provision it relies on merely establishes that the question of whether Class Members elected monthly pay requires no interpretation of the CBA. The provision, by its own unambiguous terms, simply does not apply to the Lecturer Class or to the payment of the Overload Class for the teaching of overload courses. Accordingly, the LMRA does not preempt Plaintiffs' claim. The Court should deny Defendant's motion in its entirety.

| | |
|---|---|
| Dated: May 23, 2025 | Respectfully submitted, |
| | */s/Julian Hammond* |
| | Julian Hammond (admitted pro hac vice) |
| | HAMMONDLAW, P.C. |
| | 1201 Pacific Ave., Suite 600 |
| | Tacoma, WA 98402 |
| | (310) 601-6766 |
| | jhammond@hammondlaw.com |
| | Attorneys for Plaintiffs |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

  */s/ Ari Cherniak*
Ari Cherniak