UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMILY MACINTYRE and KEITH FITTS,
Individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

CURRY COLLEGE,

      Defendant.

C.A. No. 1:25-10585-NMG

LEAVE TO FILE GRANTED ON
JUNE 4, 2025

## REPLY IN SUPPORT OF DEFENDANT CURRY COLLEGE'S
## PARTIAL MOTION TO DISMISS

Defendant Curry College's ("Defendant" or "the College") partial motion to dismiss should be granted because Plaintiffs' claims brought on behalf of the Lecturer Class and Overload Class[1] are preempted by the LMRA. In their opposition, Plaintiffs spend sixteen pages parsing and analyzing multiple provisions of the CBA in order to contend those provisions have nothing to do with their claims. At bottom, Plaintiffs' argument boils down to a request that the Court should just take their word for what they think the CBA's language means. But Plaintiffs' linguistic gymnastics to explain away the CBA only work to further demonstrate how completely intertwined Plaintiffs' claims are to numerous provisions of the CBA. Plaintiffs' claims with respect to the Lecturer Class and Overload Class are preempted and must be dismissed.

---

[1] In their Complaint, Plaintiffs seek to represent three putative classes: (1) Associate Lecturers, (2) Lecturers ("Lecturer Class"), and (3) Senior Lecturers and full-time faculty teaching overload courses ("Overload Class"). Compl. ¶ 36.

1

## I. PLAINTIFFS' CLAIMS ON BEHALF OF THE LECTURER AND OVERLOAD CLASSES ARE PREEMPTED.

### A. The Lecturer Class

Plaintiffs seek to represent a class of individuals who worked for Defendant as Lecturers and were paid on a monthly basis allegedly in violation of the Massachusetts Wage Act. Plaintiffs do not dispute that the CBA applies to Lecturers. Compl. ¶ 32; *see* Dkt. 23-1, at Art. II. T. Instead, they contend that Section M of the Salaries Article of the CBA, which states that full-time and part-time faculty members "shall receive their base salaries in twelve equal monthly installments on a one-month in advance basis," does not apply to Lecturers and therefore their untimely pay claim is not preempted. *See* Dkt. 23-1, Art. XII.M. To support their conclusion, Plaintiffs analyze Sections M, A, and B of the Salaries Article and suggest what they think the language means. According to them, the language of Section M does not apply to Lecturers because that title is not included in Article XII.A. Dkt. 26 ("Opp."), at 4. But this argument alone proves Defendant's point. Whether or not Lecturers are or are subject to Section M requires more than "mere consultation" of the CBA to resolve them. *See Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir. 2012).

Diving deeper, Section A entitled "<u>Full-Time Faculty</u>," details salary information for various full-time positions including instructors, assistant professors, associate professors, and professors. Dkt. 23-1, Art. XII.A. Section B is titled "<u>Part-Time Faculty</u>" and discusses all different types of part-time roles, including Lecturers, Senior Lecturers, and Graduate-level positions. *Id.*, Art. XII.B. While Section M applies to "full-time faculty members and part-time faculty members with professorial rank listed in Article XII.A," part-time faculty are not addressed in Section A at all. At the very least, the interplay of Section M with Sections A and B cannot be resolved by a quick glance at the CBA. Rather, the Court would be required to interpret the CBA

to determine whether Lecturers are included in Section M. That question should be resolved by an arbitrator pursuant to the grievance and arbitration provisions of the CBA.

Beyond Plaintiffs' sole argument based on their proposed interpretation of Section M of Article XII, there are other provisions of the CBA that indicate an election to be paid monthly or at the very least an understanding that Lecturers (and other faculty) would be paid monthly. The CBA specifically defines "base salary" in Article II (Definitions). It states:

> a) The base salary is the annual salary of a full-time faculty member without any additional payments, such as additional teaching assignments, overloads, winter or summer administrative payments, etc.
>
> b) The base salary is provided for a 9-month appointment *and is paid over 12 months for all full-time faculty*, with the exception of Librarians and those faculty members specified in Article XI.U.

Dkt. 23-1, Art. II.II.1-2 (emphasis added). The CBA also defines "regular salary" for "Senior Lecturers" as "the total annual Curry College earnings for the two most recent Traditional Academic years, divided by two. This number provides an average of one year's earnings, *which can be broken down by semester or month*, as required…" *Id.* II.II.3. These provisions indicate that various faculty members, including Lecturers, knew and understood they were electing to be paid monthly. Plaintiffs' attempt to paint this issue as completely distinct and separate from the CBA is a farce.

### B. The Overload Class

Similarly, Plaintiffs contend that their claims on behalf of the Overload Class are not preempted because the Court does not need "to interpret the CBA in order to determine whether members of the Overload Class elected to receive their compensation for teaching overload classes on a monthly basis." Opp. at 11. Here again, the Plaintiffs gloss over the issue. There are a number of questions the Court must answer (all of which require interpretation of the CBA) in order to assess Plaintiffs' overload compensation claims.

3

Overload compensation is extra pay for extra duties performed by employees already receiving a salary. As an initial matter, the Massachusetts Wage Act covers, among other things, employees' "salaries," but not every form of compensation is within its scope. M.G.L. ch. 149 § 148; *see*, *e.g.*, *Tze-Kit Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 713 (2018) (sick time not a wage under Massachusetts Wage Act). The CBA makes clear that overload compensation is not part of employees' base salary. *See* Dkt. 23-1, Art. II.II.1.a. ("The base salary is the annual salary of a full-time faculty member *without any additional payments*, such additional teaching assignments, *overloads*, winter or summer administrative payments, etc.") (emphasis added). Overload compensation is a creature of the CBA and determining whether it constitutes a "wage" under the Wage Act requires an interpretation of the CBA to even understand, at the most basic level, what overload compensation is. *See generally*, Dkt. 23-1 (containing more than 75 references to "overload"). As Plaintiffs acknowledge in their Opposition, case law establishes that resolution of certain issues requires interpretation of the relevant CBA where "the obligation to pay a certain amount of wages or to pay for certain time was dependent on that CBA." Opp. at 14. Defendant's obligation to pay overload compensation is purely a creation of, and required by, the CBA that was negotiated between the union and Defendant. *See Rose v. Cemex Constr. Materials Pac., LLC*, No. 2:23-CV-01979 WBS AC, 2024 WL 307790, at *4 (E.D. Cal. Jan. 26, 2024) (where "right to overtime exists solely as a result of the CBA," state law wage claim for unpaid overtime is preempted). For Plaintiffs to allege that their claim directly targeting how overload compensation is paid does not implicate the CBA is absurd on its face.[2]

---

[2] Plaintiffs also admit in their Opposition that "Article XII, § M, applies to some members of the Overload Class" but that it "does not apply to the payment of wages for overload courses to anyone, including those members of the Overload Class to which it applies." Opp. at 12. This statement alone indicates how inextricably intertwined Plaintiffs' claims are with the various provisions of the CBA.

## II. PLAINTIFFS FAILED TO EXHAUST THEIR GRIEVANCE AND ARBITRATION PROCEDURES.

Plaintiffs concede that they do not seek to bring a Section 301 claim. This is of course because they have not exhausted the exclusive grievance and arbitration procedures established by the CBA. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Instead, Plaintiffs claim that the CBA's grievance procedure is only triggered by "a violation, misinterpretation, or misapplication" of the CBA. Opp. at 15 (citing Dkt, 23-1, Art. XVI). Plaintiffs then contend that their allegations against Defendant could not possibly be considered to allege "a violation, misinterpretation, or misapplication of the terms and conditions" of the CBA. Again, this is nonsensical and contrary to law. Plaintiffs' Complaint alleges that Defendant paid certain faculty members certain compensation on a monthly basis without those faculty members having elected to be paid that way. The CBA has an entire article governing faculty salaries. *See* Dkt. 23-1, Art. XII. It has multiple provisions directly stating and indicating that certain pay will be paid on a monthly basis. To the extent Plaintiffs took issue with being paid monthly or believed that Section M (or any other provision indicating monthly pay) did not apply to them, that constitutes a grievance with the scope of the grievance and arbitration provisions of the CBA.

## III. CONCLUSION

For the foregoing reasons, Defendant requests this Court dismiss any and all claims and allegations related to a putative class action on behalf of 1) Lecturers and 2) Senior Lecturers and full-time faculty teaching overload courses and grant such other and further relief as the Court deems just and proper.

5
318128916v.2

<table>
<tr><td>Dated: June 4, 2025</td><td>Respectfully Submitted,

CURRY COLLEGE

By its Attorneys,

*/s/ Molly C. Mooney*
Gregory A. Manousos (BBO #631455)
Catherine M. Scott (BBO #691867)
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109
(617) 523-6666
(617) 367-3125 (Fax)
gmanousos@morganbrown.com
cscott@morganbrown.com

Robert A. Fisher (BBO # 643797)
Barry J. Miller (BBO# 661596)
Molly C. Mooney (BBO# 687812)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
rfisher@seyfarth.com
bmiller@seyfarth.com
mmooney@seyfarth.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

I, Molly C. Mooney, certify that on June 4, 2025, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ Molly C. Mooney*
Counsel for Defendant