Attachment A

# Attachment A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY MACINTYRE and KEITH FITTS, Individually and on behalf of all others similarly situated, <br><br>          Plaintiffs, <br><br>    v. <br><br> CURRY COLLEGE, <br><br>          Defendant. | C.A. No. 1:25-10585-NMG |

## DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

On May 6, 2025, Defendant Curry College ("Curry" or "Defendant") filed a partial motion to dismiss Plaintiffs Emily MacIntyre and Keith Fitts' ("Plaintiffs") claims on behalf of two of their proposed putative classes on the grounds that their claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"). Dkt. 22, 23. On July 4, 2025, however, Governor Maura Healey signed a bill into law that is specifically designed to terminate the predatory claims in this action and several other recent class action cases against non-profit institutions of higher education and health care systems based on monthly payments to salaried employees. That legislation, Section 113 of Chapter 9 of the Acts and Resolves of 2025 ("Section 113"), provides immunity to Curry from "any claim or cause of action … that alleges that the institution's … payment of wages on a monthly basis … violated section 148 of chapter 149 of the General Laws." This Court has already determined that Section 113 is a constitutional exercise of the Legislature's power. *Curtin-Wilding v. Trustees of Boston University*, C.A. No. 25-10432-RGS (Aug. 27, 2025) (Memorandum and Order on Motion for Judgment on the Pleadings, attached hereto as **Exhibit 1**). In *Curtin-Wilding*, this Court held that Section 113 provides immunity to non-profit institutions of higher education from the very claims brought in this case. *See id.* at 4-

1

6. Accordingly, pursuant to Rule 12(b)(6), Curry respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

## BACKGROUND

### I.    Factual and Procedural Background

Curry is a nonprofit institution of higher education. First Amended Class Action Complaint ("Am. Compl."), Dkt. 21, ¶ 13 ("Defendant is a private university … located in Milton, Massachusetts . . .").[1] This case involves a single claim under the Wage Act, in which Plaintiffs seek to recover a massive sum in statutory penalties based on Curry's longstanding practice of paying its salaried employees on a monthly basis. *Id.* ¶¶ 1-6. Plaintiffs do not contend that any employee was underpaid by a single cent, yet they seek to extract a sum that constitutes a multiple of Curry's entire payroll for its salaried personnel over a period of three years (*Id.*, ¶ 3), amounting to tens of millions of dollars and posing an existential threat to the College.

Plaintiffs filed their Complaint on March 11, 2025, alleging that Curry violated the timely payment requirements of the Massachusetts Wage Act (Mass. Gen. Laws ch. 149, §§ 148, 150) (the "Wage Act"), by failing to pay Associate Lecturers, Lecturers, and Senior Lecturers and full-time faculty for overload courses on a weekly, biweekly, or semimonthly. Am. Compl. ¶ 1. Plaintiffs allege that Curry "maintains a uniform policy and/or practice of paying Plaintiffs and other similarly situated employees monthly on the first of the month for the work performed during

---

[1] The Court may take judicial notice of Curry's non-profit status based on records maintained by the Massachusetts Attorney General as AG Charity No. 002520. *Liang through Liang v. Allebest*, No. 23-CV-11803-PGL, 2023 WL 6283429, at *1 (D. Mass. Sept. 11, 2023), *report and recommendation adopted sub nom. Liang through & by his father Liang v. Allebest*, No. CV 23-11803-RGS, 2023 WL 6282912 (D. Mass. Sept. 26, 2023) ("The Court takes judicial notice that the Corporations Division of the Massachusetts Secretary of the Commonwealth's Office has a record of such a nonprofit entity . . ."); *see also United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999) (court may take judicial notice of judicial notice of facts based on "sources whose accuracy cannot reasonably be questioned") (citing Fed. R. Evid. 201).

the previous month or even the month before that, even though Plaintiffs and similarly situated employees did not elect to be paid monthly." Am. Compl. ¶ 4.

Plaintiffs' complaint details how full-time faculty, part-time Senior Lecturers, and part-time Associate Lecturers and Lecturers are paid. Am. Compl. ¶¶ 15-20. Specifically, Plaintiffs allege that "full-time faculty are employed pursuant to either one-year, two-year, or three-year contracts" and "part-time faculty who hold the rank of Senior Lecturers are also employed pursuant to one-year contracts." *Id.* ¶¶ 15-16. Senior Lecturers, Plaintiffs allege, "are sometimes employed to teach overload courses pursuant to supplemental overload contracts for additional compensation." *Id.* ¶ 16. They allege that full-time faculty and part-time Senior Lecturers are "typically paid over 12 months" but that any overload compensation "is paid in four monthly installments." *Id.* ¶ 17. With respect to part-time Associate Lecturers and Lecturers, Plaintiffs contend that they "are employed pursuant to one semester contracts and are also paid in monthly installments (e.g. four monthly installments for regular fall and spring semesters)." *Id.* ¶ 18. For all, Plaintiffs contend that Curry "has maintained a policy and/or practice of paying earnings … on the first of each month for the work performed during the previous month or even the month before that." Compl. ¶ 19. As an example, Plaintiffs allege that payment for an overload course[2] or under a one-semester contract during the fall semester is through four monthly payments on the

---

[2] In the collective bargaining agreement ("CBA") between Curry and the Curry College Chapter of the American Association of College Professors (the "Union"), which applies to Lecturers, Senior Lecturers, and full-time faculty, Curry and the Union specifically agreed as to how and when overload compensation would be paid. *See* Dkt. 23-1, at Art. XII, p. 117 (describing contracted overloads as paid pursuant to a supplemental contract: "A contracted overload is scheduled in advance by a Department Chairperson in accordance with the provisions of Article XI … Once approved, any and all overload duties will be delineated in a supplemental contract for the following semester, and will also specify the additional compensation to be paid."); *id.* at Art. XII, p. 118 (describing pay schedule for non-contracted overloads: "Compensation for non-contracted overloads shall be $260 per student. … Non-contracted overload compensation is normally paid in two equal installments (November/December or April/May).").

following schedule: October 1, November 1, December 1 and January 1.  Am. Compl. ¶¶ 20-21.

Similarly in the spring semester, which begins in January, the monthly payments for an overload

course or under a one semester contract occur on the following schedule: March 1, April 1, May 1

and June 1.  *Id.* at 22 & 23.

Accordingly, Plaintiffs seek to extract an exorbitant sum in statutory penalties from Curry

based on asserted technical violations of the timely payment requirements of the Massachusetts

Wage Act, both on their own behalf and on behalf of the following three putative classes:

> All individuals employed at Curry College as Associate Lecturers during the
> Class Period ("Associate Lecturer Class").
>
> All individuals employed at Curry College as Lecturers during the Class Period
> ("Lecturer Class").
>
> All individuals employed as Senior Lecturers or as full-time faculty and who
> taught overload courses during the Class Period ("Overload Class").

Compl. ¶ 36.

On May 6, 2025, Curry filed a partial motion to dismiss Plaintiff's claims on behalf of

Lecturers and Senior Lecturers and full-time faculty teaching overload courses.  Those claims turn

on rights and obligations in a collective bargaining agreement between Curry and the Union and

are therefore preempted by Section 301 of the LMRA.  Dkt. 22, 23.  Plaintiffs opposed Curry's

motion on May 23, 2025 (Dkt. 26), and Curry filed a reply in support of its motion on June 4, 2025

(Dkt. 29).

## II.    Massachusetts Passes Legislation Providing Immunity

On July 4, 2025, while Curry's partial motion to dismiss was pending, Governor Maura

Healey signed legislation that included Section 113 into law.  Section 113 provides immunity to

nonprofit institutions of higher education and nonprofit organizations comprising a healthcare

delivery system from lawsuits targeting the monthly payment of wages and states:

> Nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system shall be immune from liability with regard to any claim or cause of action seeking a legal or equitable remedy or other relief commenced between July 1, 2024 and September 30, 2028, inclusive, that alleges that the institution's or organization's payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term violated section 148 of chapter 149 of the General Laws; provided, however, that earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

Section 113 (available here: https://budget.digital.mass.gov/summary/fy26/outside-section/section-113-payment-of-wages-of-certain-nonprofit-organizations/). Section 113 was enacted in direct response to multiple class action lawsuits brought under the Massachusetts Wage Act against nonprofit colleges and universities that have historically paid employees on a monthly basis, including the present action.[3]

A series of bills[4] that ultimately led to the passage of Section 113 were first introduced on February 27, 2025, by Senator Michael F. Rush[5] and Representative Jeffrey N. Roy.[6] *See* Bill

---

[3] *Curtin-Wilding v. Trs. of Boston Univ.*, C.A. No. 1:12-cv-10432-RGS (D. Mass. 2025); *Martin, et al. v. Amherst Coll.*, C.A. No. 2480CV00146 (Hampshire Sup. Ct. 2024); *Brown, et al. v. President & Fellows of Harvard Coll.*, C.A. No. 2581-cv-00143 (Middlesex Sup. Ct. 2025).

[4] The Court may take judicial notice of the legislative history of Section 113. *Getty Petroleum v. Capital Terminal Co.*, 391 F.3d 312, n. 12 (1st Cir. 2004) (taking judicial notice of legislative history under Federal Rules); *Daggett v. Comm'n on Gov't Ethics & Election Practices*, 205 F.3d 445, 456 n. 9 (1st Cir. 2000) ("The [Federal] Rules of Evidence state that the court may take judicial notice of legislative facts whether requested or not."); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice.").

[5] S.1369 stated: "With respect to any claim or cause of action seeking any legal or equitable remedy or relief commenced on or after July 1, 2024, a nonprofit institution of higher education shall be immune from civil liability under claims alleging that the institution's payment of wages on a monthly basis violated this Section." Bill S.1369, An Act Relative to Nonprofit Institutions of Higher Education, available here: https://malegislature.gov/Bills/194/S1369 ("Bill S.1369").

[6] H.2164 stated: "With respect to any claim or cause of action seeking any legal or equitable remedy or relief commenced on or after July 1, 2024, a nonprofit institution of higher education shall be immune from civil liability under claims alleging that the institution's payment of wages

S.1369; Bill H.2164.   On April 16, 2025, the Joint Committee on Labor and Workforce Development held a hearing at which the two bills were discussed.  Joint Committee on Labor and Workforce Development, April 16, 2025 Hearing (available here: https://malegislature.gov/Events/Hearings/Detail/5135/Video1).  At that hearing, Rob McCarron, the President of the Association of Independent Colleges and Universities in Massachusetts, provided testimony to the Joint Committee on the two proposed bills.  He explained that the proposed legislation would correct "unintended consequences" of the Massachusetts Wage Act, which became apparent with the "filing of four[7] class action lawsuits against colleges and universities in Massachusetts," including Curry.  *Id.*  Mr. McCarron testified as follows:

> House 2164 and Senate 1369 seek to address the devastating financial impact to these institutions that would result from these lawsuits.  […] the Supreme Judicial Court decision in the *Reuter*[8] case greatly amplifies the potential damages in a way that does not align with the legislative intent of the statute.  [The lawsuits] place[] hundreds of millions of dollars and even billions of dollars at issue.  It is very important to note that all of the employees of the institutions that have been targeted by these class action lawsuits received their full pay and on a regularly scheduled basis.  There are no allegations that any employee was paid less than what they were owed, and there are no allegations that any employee was paid later than the established pay structure.  Again, the intent of the Mass[achusetts] Wage Act is to go after those unscrupulous employers and there is no allegation of any of that in these cases.  And the financial harm to the institutions is entirely disproportionate to the damages suffered by the affected employees, and the resulting harm to the institutions would dramatically affect their ability to serve students and employees.

*Id.*  Mr. McCarron also noted that these lawsuits were filed during times of unprecedented uncertainty for colleges and universities.  *Id.* ("We have seen significant threats to international students," "there have also been cuts to research funding, existing contracts have been terminated,

---

on a monthly basis violated this Section."  Bill H.2164, An Act Relative to Institutions of Higher Education, available here: https://malegislature.gov/Bills/194/H2164 ("Bill H.2164").

[7] Mr. McCarron identified Amherst College, Boston University, Harvard University, and Curry College.

[8] *Reuter v. City of Methuen*, 489 Mass. 465 (2022) (mandating treble damages for violations the Wage Act).

and the awarding of new grants has been slowed down considerably.").  He noted these challenges represent "a huge impact to the Massachusetts economy, 3.5 billion dollars every year." *Id.*  He concluded by noting the "impact to these institutions [of these class action lawsuits] would be significant and severe, and it would affect students, it would affect financial aid, it would affect jobs, it would affect research." *Id.*

Following the hearing noted above, the bills were discussed at a supplemental budget hearing on May 29, 2025.  Supplemental Budget Hearing, May 29, 2025 (https://malegislature.gov/Events/Hearings/Detail/5198).    From there, the Senate proposed amendments to the legislation, and a joint conference committee was appointed to reconcile the differences.  On June 30, 2025, the House and Senate accepted the Conference Committee reports and enacted the budget legislation.  On July 4, 2025, Governor Healey signed the legislation into law with an emergency preamble, rendering it immediately effective.

## **ARGUMENT**

Curry moves to dismiss the entirety of Plaintiffs' First Amended Complaint based on Section 113.  In order to survive a motion to dismiss, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Bare allegations and legal conclusions or a "formulaic recitation of a cause of action's elements will not do. *Id.*  Furthermore, although a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of [their] entitlement to relief requires more than labels and conclusions." *Id.* (internal quotations omitted).  That is, while a plaintiff is entitled to all reasonable inferences from the facts alleged, his legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).  Rather, "[w]hat is required at the pleading stage are factual allegations plausibly suggesting (not merely consistent with) an

entitlement to relief, in order to reflect the threshold requirement ... that the plain statement possesses enough heft to show that the pleader is entitled to relief." *Id.*

## I.    SECTION 113 PRECLUDES PLAINTIFFS' CLAIMS

The Court should dismiss Plaintiffs' First Amended Complaint in its entirety because Section 113 provides clear and categorical statutory immunity to Curry on all claims Plaintiffs have asserted in this action.  Section 113 provides immunity to "[n]onprofit institutions of higher education … with regard to any claim … commenced between July 1, 2024 and September 30, 2028 … that alleges that the institution's … payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term violated section 148 of chapter 149 of the General Laws."  Plaintiffs plead that Curry is an institution of higher education (Compl. ¶ 12), and its non-profit status is a matter of public record.  Plaintiffs also filed their Complaint in this case on March 11, 2025, squarely within the statutory immunity period that Section 113 provides.  Plaintiffs allege that Curry violated the Wage Act by paying certain employees "on the first of each month for the work performed during the previous month or even the month before that" pursuant to contracts of varying length (one semester, one, two, or three-year depending on role).  Compl. ¶¶ 15-19.  These allegations are specifically covered by Section 113, which provides immunity for claims targeting an institution's "payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term."  Section 113; *see also Curtin-Wilding*, at 5 ("The court agrees with the parties that the plain language of Section 113 immunizes BU from liability for Curtin-Wilding's Wage Act claim that BU paid her on a monthly basis).

Moreover, Section 113 provides immunity as long as:

earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

*Id*.

With respect to monthly wages, Plaintiffs' complaint alleges on its face that Curry paid those wages on a monthly schedule (on the first of the month) pursuant to its contracts with its faculty members, thus satisfying Section 113. Compl. ¶ 19 (Curry "has maintained a policy and/or practice of paying earnings … on the first of each month for the work performed during the previous month or even the month before that"). Plaintiffs described in detail the agreements Curry has with various faculty regarding how they will be paid. As to overloads or those on a one semester contract, Plaintiffs allege that payments were made in four monthly installments: October 1, November 1, December 1 and January 1 in the fall and March 1, April 1, May 1 and June 1 in the spring. Moreover, the CBA, which is incorporated by reference in Plaintiffs' Amended Complaint, specifically delineates how and when overload compensation is paid to Lecturers, Senior Lecturers, and full-time faculty. There is no allegation that Curry ever paid faculty outside the parameters of these agreed-upon schedules. Rather, Plaintiffs contend that theses schedules, themselves, violated the Wage Act. All of the alleged payments at issue in this case were timely paid in accordance with Curry's agreements with its faculty members, the CBA, or pursuant to the established schedules, thus satisfying Section 113. There is no allegation in the Complaint that Plaintiffs were ever paid later than promised. Accordingly, Plaintiffs' own factual allegations place all of their claims squarely within the immunity provided by Section 113.

Nor can there be any dispute that the Legislature intended Section 113 to apply retroactively, including to Plaintiffs' claims in this action. Section 113 applies to claims "commenced" after July 1, 2024, regardless of when the wage payments occurred. Plaintiffs'

Complaint was filed in March 2025, squarely within the immunity window. Courts construe such unambiguous statutory directives as dispositive. *See, e.g., Boston Edison Co. v. Mass. Water Res. Auth.*, 459 Mass. 724, 743 (2011) ("We acknowledge the general rule [that] statutes operate prospectively unless a contrary legislative intent is clearly shown. But the Legislature made its contrary intent plain in amending § 37 when it declared that the amended statute 'shall apply to those pending cases in which no final judgment has entered as of the effective date of this act.'") (internal citation omitted); *see also Curtin-Wilding*, at 5-6 (dismissing Plaintiff's monthly pay claim pursuant to Section 113 where such claim was "file on February 21, 2025" and "squarely falls within the applicable statutory period"). Moreover, the legislative history makes clear that Section 113 was passed to address class action litigation targeting institutions of higher education, including this specific case against Curry. There is no room for dispute that the Legislature intended Section 113 to apply retroactively and to extinguish this litigation and others like it.

## II. SECTION 113 IS A CONSTITUTIONAL EXERCISE OF THE LEGISLATURE'S POWER

In other cases that were filed before Section 113 was passed, including other cases brought by Plaintiffs' counsel in this action, Plaintiffs have sought to avoid the application of Section 113 to their claims by arguing that the Legislature's decision to extinguish their predatory claims for statutory penalties was an unconstitutional exercise of power.[9] Any challenge to the retroactive application of Section 113 on constitutional grounds fails. "A legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no 'conceivable grounds' which could support its validity." *Leibovich v. Antonellis*, 410 Mass. 568, 984 (1991). Courts must solely consider "whether the

---

[9] *See, e.g.*, *Curtin-Wilding v. Boston University*, C.A. No. 1:25-cv-10432 (D. Mass. 2025), Dkt. 50 (Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings), at 6-21.

statute falls within the legislative power to enact," even if the law may seem "unwise, improvident, or out of harmony with a particular school of thought." *Dutra v. Trs. of Bos. Univ.*, 96 F.4th 15, 20 (1st Cir. 2024) (internal citation omitted).  Retroactive legislation "must satisfy the due process test: 'a legitimate legislative purpose furthered by rational means.'" *Id.* at 19 (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992); *see also Am. Mfrs. Mut. Ins. Co. v. Comm'r. of Ins.*, 374 Mass. 181, 190 (1978) ("[W]e apply the test of reasonableness to the retroactive aspect of [a statute].").[10]

In evaluating the reasonableness of a retroactive statute, courts consider the following factors: (1) the nature of the public interest which explicitly or may have motivated the Legislature to enact the retroactive statute; (2) the nature of the rights affected retroactively and the reasonableness of any reliance expectations on those rights; and (3) the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored. *Dutra*, 96 F.4th at 20 (citing *Leibovich*, 410 Mass. at 577).  "In any evaluation of reasonableness, the objectors face a heavy burden, for we give credit to every rational presumption in favor of the legislation."  *In re Liquidation of Am. Mut. Liab. Ins. Co.*, 434 Mass. 272, 282 (2001).

## A.    Section 113 Protects the Public Interest

The First Circuit explained in *Dutra* that courts should "defer to legislative judgment as to the necessity and reasonableness of a particular measure," which "is customary in reviewing economic and social regulation." *Dutra*, 96 F.4th at 20 (citing *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22-23 (1977)); *see also Com. v. Henry's Drywall Co., Inc.*, 366 Mass. 539, 544 (1974)

---

[10] "The legal analysis of whether retroactive statutes violate the Due Process Clause of the United States Constitution is that also followed as to the Massachusetts Constitution."  *Dutra*, 96 F.4th at 19 (citing *Nantucket Conservation Found., Inc. v. Russell Mgmt., Inc.*, 380 Mass. 212, 503 (1980)).

("It is not our function to consider the expediency of an enactment or the wisdom of its provisions.").

Even if this Court were in a position to second-guess the Legislature's policy judgment underlying Section 113, it is plain that the legislation protects the public interest. In fact, this Court has already held that "Section 113 serves the public interest by addressing the 'devastating financial impact' of these Wage Act claims to Massachusetts institutions of higher education." *Curtin-Wilding*, at 7. As Mr. McCarron explained, the class action lawsuits targeting colleges and universities in Massachusetts have put hundreds of millions at issue. Indeed, Plaintiffs are not shy about their demands to recover "millions of dollars" (Am. Compl., ¶ 6) in this action, despite their concession that all of the employees at issue were paid in full and on the schedule that Curry promised. This lawsuit and the others like it threaten the very existence of some of Massachusetts' most well-known and longstanding institutions of higher education. The colleges and universities targeted by these lawsuits are large employers, serve tens of thousands of students in Massachusetts, and have more than a billion-dollar impact on the economy of the Commonwealth.

Courts have routinely held that legislation protecting institutions of higher education legitimately protect the public interest, including Section 113 itself. *Curtin-Wilding*, at 7-9 (retroactive application of Section 113 to preclude Wage Act claim constitutional where "[p]rivate, nonprofit colleges in the Commonwealth educate 290,000 students and employ nearly 100,000 people … and represent a $71 billion impact for the state each year"); *Dutra*, 96 F.4th at 22 (finding retroactive application of statute providing immunity to colleges and universities in actions filed in response to emergency COVID-19 orders constitutional, noting "[t]he Legislature is well aware that Massachusetts is home to a number of colleges and universities, and they are vital to the state's economy"); *Rodrigues v. Boston Coll.*, 710 F. Supp. 3d 95, 100 (D. Mass. 2024) (same, rejecting

plaintiffs' contention that legislation furthers interests of "deep-pocketed" private institutions, holding statute applies uniformly to private and public institutions and "[t]he Commonwealth greatly benefits from private institutions of higher education located within its borders"); *see also City of Worcester v. New England Inst.*, 335 Mass. 486, 489 (1957) (stating that "[t]he promotion of education by nonprofit institutions … has from early times been often asserted, recognized or reaffirmed as a public purpose"). The first factor in the constitutional analysis thus favors retroactive application of Section 113.

**B.      Section 113 Affects Only Plaintiffs' Attempt to Recover a Windfall, and They Cannot Claim to Have Relied on a Right to Be Paid More Frequently**

Plaintiffs challenge only the cadence of their monthly pay; they do not contend they and the putative class members were paid later than promised, much less do they claim that they have been underpaid by even a single cent.  Parties challenging the reasonableness of a retroactive statute "'must show that they acted in reasonable reliance upon the previous state of the law'" and "'would have acted differently had [they] known [the statute at issue] would be enacted.'" *Dupont v. Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 694 (quoting *Leibovich*, 410 Mass. at 578).

Plaintiffs cannot make such a showing.  In *Curtin-Wilding*, in attempting to avoid retroactive application of Section 113, the plaintiff alleged that if she had known the Legislature was going to deny her protection under the Wage Act, she would not have undertaken the time, expense, and personal and professional risk to vindicate her rights.  *Curtin-Wilding*, at 9.  This Court swiftly rejected that argument, holding that the plaintiff did not "persuasively show that she would have acted differently, other than forego the filing of her lawsuit, had she known Section 113 would be enacted." *Id.*  The Court also relied on the fact that there were no allegations that Curtin-Wilding ever contested the monthly payment of her wages.  The same is true here.  Plaintiffs were never paid more frequently than monthly, and they had no reason to expect that Curry would

13

provide a more frequent basis of pay at any point in the future. And even before Section 113 was passed, Plaintiffs' claimed entitlement to a more frequent cadence of pay was very much in doubt, including based on the provisions of the Wage Act expressly authorizing educational institutions to pay teachers on a monthly basis. *See* M.G.L. ch. 148 § 149; *see also* M.G.L. ch. 71 § 40. Plaintiffs therefore have no prospect of showing that they have been deprived of any vested interest, and nothing in their Complaint suggests that they relied on any ostensible legal entitlement to be paid more frequently for any purpose other than to extract penalties from Curry in this litigation. The second factor in the governing constitutional analysis thus favors retroactive application of Section 113.

### C. Section 113 Balances Interests of Institutions of Higher Education and Requirements of the Massachusetts Wage Act

Section 113 is narrowly tailored to provide immunity to the entities targeted by the class action lawsuits challenging monthly pay. In considering the third prong of the *Dutra* test, courts weigh the "duration of the burden imposed by the retroactive statute and 'whether the scope of the statute is narrowly drawn to treat the problem perceived by the legislature.'" *Dutra*, 96 F.4th at 24 (citing *Sliney v. Previte*, 473 Mass. 283, 294 (2015)). This Court has already determined that Section 113 "will affect a relatively small number of cases and is narrowly drawn to address a public policy concern determined by the Legislature to be detrimental to the welfare of the Commonwealth," and therefore concluding the extent of the impact of the legislation "is not excessive." *Curtin-Wilding*, at 10.

Similarly, in *Dupont*, the Appeals Court upheld a statute retroactively prohibiting the issuance of firearms licenses to "those who have been convicted of a misdemeanor punishable by more than two years" because the statute was "the result of some consideration" and did not affect "everyone who has been convicted of any misdemeanor, but instead [drew] a distinction among

them based on the seriousness of their offense." 57 Mass. App. Ct. at 694. In *Dutra*, the First Circuit also upheld a statute's retroactive effect because "its application [wa]s confined to suits that commence[d] within the specified time frame, which were based on acts or omissions that occurred during the spring 2020 academic term." *Dutra*, 96 F.4th at 24 (internal citation omitted). Here, Section 113 is similarly limited to lawsuits filed between July 1, 2024 and September 30, 2028.[11] Finally, this "statute will affect a relatively small number of cases," which weighs in favor of finding the statute's retroactive application constitutional. *Parello v. McKinney*, 46 Mass. App. Ct. 785, 792 (1999) (citing *Leibovich*, 410 Mass. at 579).

The third and final factor in the constitutional analysis thus also favors retroactive application of Section 113.

## <u>CONCLUSION</u>

WHEREFORE, Curry respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice and grant such other and further relief as the Court deems just and proper.

---

[11] Due to the Wage Act's three-year statute of limitations, the September 2028 end date for the immunity that Section 113 provides means that institutions will be required to change any practices that otherwise might give rise to liability under the Wage Act by September 30, 2025.

DATED:                                              Respectfully submitted,

                                                    CURRY COLLEGE,

                                                    By its attorneys:


                                                    /s/
                                                    _____
                                                    Robert A. Fisher (BBO# 643797)
                                                    rfisher@seyfarth.com
                                                    Barry J. Miller (BBO# 661596)
                                                    bmiller@seyfarth.com
                                                    Molly C. Mooney (BBO# 687812)
                                                    mmooney@seyfarth.com
                                                    Seyfarth Shaw LLP
                                                    Two Seaport Lane, Suite 1200
                                                    Boston, Massachusetts 02210
                                                    Telephone:    (617) 946-4800
                                                    Facsimile:     (617) 946-4801

                                                    Gregory A. Manousos (BBO #631455)
                                                    Catherine M. Scott (BBO #691867)
                                                    MORGAN, BROWN & JOY, LLP
                                                    28 State Street, 16th Floor
                                                    Boston, MA 02109
                                                    (617) 523-6666
                                                    (617) 367-3125 (Fax)
                                                    gmanousos@morganbrown.com
                                                    cscott@morganbrown.com

Exhibit 1

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10432-RGS

LYDIA CURTIN-WILDING,
individually and on behalf of all others similarly situated

v.

TRUSTEES OF BOSTON UNIVERSITY

MEMORANDUM AND ORDER ON MOTION FOR JUDGMENT ON THE
PLEADINGS, MOTION TO AMEND THE COMPLAINT, AND MOTION TO
CERTIFY QUESTIONS OF LAW

August 27, 2025

STEARNS, D.J.

Before the court is defendant Trustees of Boston University's (BU) motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), as well as plaintiff Lydia Curtin-Wilding's motions to amend the Complaint, Fed. R. Civ. P. 15(a)(2), and to certify certain questions of law to the Massachusetts Supreme Judicial Court (SJC), Mass. S.J.C. Rule 1:03. For the following reasons, the motion for judgment on the pleadings is allowed. The motions to amend the Complaint and certify questions of law to the SJC are denied.

## BACKGROUND

The court assumes familiarity with the facts of the case. Since August of 2015, BU, a private, nonprofit research institution of higher education

with campuses in Boston, employed Curtin-Wilding as a salaried Lecturer. Compl. (Dkt. # 1) ¶ 13. BU paid Curtin-Wilding on a monthly basis on or about the last business day of each month. *Id.* ¶¶ 15, 18. She claims that BU's policy resulted in the wages that she and the putative class members earned in the first half of the month from February 18, 2022, until August 1, 2023, being paid approximately nine days late, in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Wage Act). *Id.* ¶¶ 18, 23. Curtin-Wilding filed this putative class action on February 21, 2025. *See* Dkt. # 1. On May 23, 2025, this court denied BU's motion to dismiss the Complaint. *See* Dkt. # 34. On June 6, 2025, BU filed its Answer. *See* Dkt. # 38.

On July 4, 2025, Massachusetts Governor Maura Healey signed a budget bill into law, which included Section 113 of Chapter 9 of the Acts and Resolves of 2025 (Section 113). Section 113 provides immunity to nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system from Wage Act lawsuits targeting the employers' monthly payment of wages to employees. *See* 2025 Mass. Acts. ch. 9, § 113.[1]

---

[1] On April 16, 2025, the Joint Committee on Labor and Workforce Development held a hearing on two bills, Bill S.1369 and Bill H.2164, which were the precursors of Section 113. *See Daggett v. Comm'n on Gov't Ethics & Election Pracs.*, 205 F.3d 445, 456 n.9 (1st Cir. 2000) (holding that the court may take judicial notice of legislative facts). At the hearing, Rob McCarron, the President of the Association of Independent Colleges and Universities in Massachusetts, testified that the proposed legislation would

Following the passage of Section 113, on July 25, 2025, BU filed a motion for judgment on the pleadings. *See* Dkt. # 39. Three days later, on July 28, 2025, Curtin-Wilding filed a motion to amend the Complaint. *See* Dkt. # 41. On August 1, 2025, she filed a motion to certify a question of law to the SJC. *See* Dkt. # 48. On August 19, 2025, Curtin-Wilding filed another motion to certify additional questions of law to the SJC. *See* Dkt. # 56. Before the court are the pertinent motions, which the court will discuss in turn.

## DISCUSSION

### 1. Motion for Judgment on the Pleadings

Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the

---

correct "unintended consequences" of the Wage Act, manifesting in the filing of multiple class action lawsuits against universities in Massachusetts. *See* Higher Educ. Hearing (Constitutional Amendment/Higher Education: Hearing on S.1369, H.2164 Before the Joint Comm. on Lab. & Workforce Dev., 194th Gen. Ct. (Mass. 2025) (statement of Rob McCarron) (Dkt. # 50-2)) at 2:23. On May 29, 2025, the bills were also discussed at a supplemental budget hearing. The Senate proposed amendments to the legislation and appointed a joint conference committee to reconcile the differences. On June 30, 2025, the House and Senate accepted the conference committee reports and enacted the budget legislation.

archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom. . . ." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

BU argues that judgment on the pleadings is appropriate because Section 113 provides statutory immunity to BU based on a plain reading of the legislation. *See* Dkt. # 40 at 6. Curtin-Wilding concedes that Section 113 "grants immunity only to 'nonprofit institutions,'" *see* Dkt. # 42-1 at 2, but challenges the constitutionality of Section 113, claiming that it: (a) is an unreasonable and inequitable retroactive statute under the United States and Massachusetts Constitutions, *see* Dkt. # 50 at 9; (b) is an impermissible selective exemption to standing laws in violation of Article X of the Massachusetts Declaration of Rights, *see* Dkt. # 50 at 6; and (c) violates the remedies clause of Article XI of the Massachusetts Declaration of Rights, *see* Dkt. # 50 at 20.

The Wage Act requires that:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week.

Mass. Gen. Laws ch. 149, § 148.  However, Section 113 provides that:

> Nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system shall be immune from liability with regard to any claim or cause of action seeking a legal or equitable remedy or other relief commenced between July 1, 2024 and September 30, 2028, inclusive, that alleges that the institution's or organization's payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term violated section 148 of chapter 149 of the General Laws; provided, however, that earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

2025 Mass. Acts. ch. 9, § 113.  The court agrees with the parties that the plain language of Section 113 immunizes BU from liability for Curtin-Wilding's Wage Act claim that BU paid her on a monthly basis.  *See Summit Inv. and Development Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir. 1995) (holding that words in a statute are to be given their plain meaning unless a literal interpretation leads to an absurd result).  Curtin-Wilding's claim, which was

filed on February 21, 2025, squarely falls within the applicable statutory period.[2]

## A. Retroactive Application of Law

"The legal analysis of whether retroactive statutes violate the Due Process Clause of the United States Constitution is that also followed as to the Massachusetts Constitution." *Dutra v. Trs. of Bos. Univ.*, 96 F.4th 15, 19-20 (1st Cir. 2024), citing *Nantucket Conservation Found., Inc. v. Russell Mgmt., Inc.*, 380 Mass. 212, 214 (1980); *see Am. Mfrs. Mut. Ins. Co. v. Comm'r of Ins.,* 374 Mass. 181, 194 (1978) ("[W]e perceive no need for separate analysis of [plaintiffs'] various contentions under the impairment-of-contracts clause and under the [D]ue [P]rocess [C]lause of the United States Constitution and cognate State constitutional provisions."). "Retroactive legislation must satisfy the due process test: 'a legitimate legislative purpose furthered by rational means.'" *Dutra*, 96 F.4th at 20, quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). "A

---

[2] Curtin-Wilding argues that BU must amend its Answer to include its unpled affirmative defense of immunity under Section 113 before moving for judgment on the pleadings. *See* Dkt. # 50 at 3. BU contends that Section 113 is not an affirmative defense. *See* Dkt. # 55 at 2. "When an affirmative defense is 'definitively ascertainable from the complaint and other allowable sources' and the facts are "suffic[ient] to establish the affirmative defense with certitude,'" a court may grant a Rule 12(c) motion. *Taylor v. Milford Reg'l Med. Ctr., Inc.*, 733 F. Supp. 3d 8, 13 (D. Mass. 2024), quoting *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008).

legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no conceivable grounds which could support its validity." *Id.* (citation and internal quotation marks omitted). "Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Id.*

In evaluating the reasonableness of a retroactive statute, the court weighs three factors:

> (1) the nature of the public interest which explicitly or may have motivated the Legislature to enact the retroactive statute; (2) the nature of the rights affected retroactively and the reasonableness of any reliance expectations on those rights; and (3) the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored.

*Id.*

As to the first factor, the court finds Section 113 serves the public interest by addressing "the devastating financial impact" of these Wage Act claims to Massachusetts institutions of higher education. *See* Higher Educ. Hearing at 3:14-23. McCarron, President of the Association of Independent Colleges and Universities in Massachusetts, testified before the Joint Committee on Labor and Workforce about the bill, which would become Section 113. He referenced this lawsuit and others like it:

> [The lawsuits] place[] hundreds of millions of dollars and even billions of dollars at issue. It is very important to note that all of the employees of the institutions that have been targeted by these class action lawsuits received their full pay and on a regularly scheduled basis. There are no allegations that any employee was paid less than what they were owed, and there are no allegations that any employee was paid later than the established pay structure. Again, the intent of the Mass Wage Act is to go after those unscrupulous employers and there is no allegation of any of that in these cases. And the financial harm to the institutions is entirely disproportionate to the damages suffered by the affected employees, and the resulting harm to the institutions would dramatically affect their ability to serve students and employees.

Higher Educ. Hearing at 4:2-20. At the conclusion of McCarron's testimony, Representative McCurty stated:

> Look, we and the legislature, we try to do the best we can but we don't get it right all the time and occasionally there's an unintended consequence. One of the beauties of the work that we do is have an opportunity to go back and, you know, address these matters. So, its really important that you are here.

*Id.* at 6:12-18. The "Legislature is well aware that Massachusetts is home to a number of colleges and universities, and they are vital to the state's economy." *Dutra*, 96 F.4th at 22. Private, nonprofit colleges in the Commonwealth "educate 290,000 students and employ nearly 100,000 people . . . and represent a $71 billion impact for the state each year." *See* Higher Educ. Hearing at 2:14-17. And "[e]ven if the statute disproportionately benefits private actors, that does not mean it was enacted

contrary to public interest." *Rodrigues v. Coll.*, 710 F. Supp. 3d 95, 100 (D. Mass. 2024).

As to the second factor, the court finds that Section 113 is based upon "reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22 (1977), citing *Hudson Water Co. v. McCarter*, 209 U.S. 349, 445-447 (1908). Although Curtin-Wilding alleges that had she known the Legislature was "prepared to deny her, but no other category of employee, protection under the Wage Act, she certainly would not have undertaken the time, expense, and personal and professional risk to vindicate her rights," *see* Dkt. # 50 at 17, she does not persuasively show that she would have acted differently, other than forego the filing of her lawsuit, had she known Section 113 would be enacted. *See Dupont v. Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 694 (2003) (holding that parties challenging the reasonableness of a retroactive statute "must show that they acted in reasonable reliance upon the previous state of law" and "would not have acted differently had [they] known [the statute at issue] would be enacted"). There are no allegations that Curtin-Wilding, a BU employee since 2015, otherwise contested her monthly payment of wages. Nor are there any

allegations that BU paid Curtin-Wilding less than what she was owed or later than the established monthly pay structure.

Lastly, under the third factor, the court determines that the "extent of the impact is not excessive." *See Dutra*, 96 F.4th at 25 (courts "weigh the 'duration of the burden imposed by the retroactive statute' and 'whether the scope of the statute is narrowly drawn to treat the problem perceived by the legislature'"), quoting *Sliney v. Previte*, 473 Mass. 283, 294 (2015). The statute will affect a relatively small number of cases and is narrowly drawn to address a public policy concern determined by the Legislature to be detrimental to the welfare of the Commonwealth. *See Parello v. McKinney,* 46 Mass. App. Ct. 785, 792 (1999) (holding that the scope of a statute was not excessive because the statute affected a relatively small number of pending cases), citing *Leibovich v. Antonellis*, 410 Mass. 568, 579 (1991). In this claim, immunity is "confined to suits that commenced within the specified time frame" between July 1, 2024 and September 30, 2028. *See* 2025 Mass. Acts. ch. 9, § 113; *Dutra*, 96 F.4th at 24. The legislation only affects those suits in which a technical violation of the Wage Act occurred – Section 113 does not provide immunity to higher education institutions that have not paid in full employees' wages "within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) or pursuant to any written

policy, schedule or agreement presented to an employee." *See* 2025 Mass. Acts. ch. 9, § 113.  Accordingly, the court finds that a balancing of all three factors weighs in favor of retroactive application of Section 113 to this case.

### B. Article X of the Massachusetts Declaration of Rights

Curtin-Wilding contends that Section 113 violates Article X of the Massachusetts Declaration of Rights because it is a "special legislation" that is designed to insulate a handful of employers, including Harvard University, Amherst College, Worcester Polytechnic Institute, Curry College, and Mass General Brigham (all of whom face pending Wage Act lawsuits). *See* Dkt. # 50 at 6.

 Article X of the Massachusetts Constitution provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of h[er]s life, liberty and property, according to standing laws." Mass. Const. pt. 1., art. X.  It thereby "prohibits the enactment of special legislation that singles out any person for special privileges or advantages at the expense of the rights of another." *Kienzler v. Dalkin Shield Claimants Tr.*, 426 Mass. 87, 89 (1997) (internal citations and quotations omitted).  Courts have defined "special legislation" as "legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial

degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them." *Id.* at 89 n.2.

Section 113 applies equally to all "[n]onprofit institutions of higher education" – it does not benefit an individual in the way Article X prohibited. 2025 Mass. Acts. ch. 9, § 113; *see Donahue v. City of Boston*, 264 F. Supp. 2d 74, 83 (D. Mass. 2003) (holding that a statute at issue was not a "special legislation" that violated the Constitution of the Commonwealth of Massachusetts because it applied equally to all applicants to the Boston Police and Fire Departments who took the civil service exam after the statute's enactment). And as Curtin-Wilding concedes, Section 113 does not mention by name the six university employers facing Wage Act violation claims. *See* Dkt. # 50 at 7.

## C. Article XI of the Declaration of Rights

Lastly, Curtin-Wilding contends that Section 113 violates the remedies clause of Article XI of the Massachusetts Declaration of Rights because it strips her of all remedies for her untimely pay. *See* Dkt. # 50 at 20.

Article XI of the Massachusetts Declaration of Rights guarantees that:

> Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which [s]he may receive in h[er] person, property, or character. [S]he ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

*Graizzaro v. Graizzaro*, 36 Mass. App. Ct. 911, 912 (1994), citing Mass. Const. pt. 1., art. XI.  However, the retroactive application of Section 113 to Curtin-Wilding's claim in this case is a reasonable exercise of the Legislature's authority.  Moreover, Article XI's guarantee of "'a certain remedy . . . for all injuries . . . which [one] may receive' has never been construed to grant to any person 'a vested interest in any rule of law entitling [such person] to insist that it shall remain unchanged for his benefit.'" *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 44 (1983) (alteration in original), quoting *New York Cent. R.R. v. White*, 243 U.S. 188, 198 (1917).[3]

## 2. Motion to Certify Questions of Law to the SJC

Curtin-Wilding asks this court to certify the following questions of law to the SJC:

(1)  Would the retroactive application of the immunities provided by Section 113 of Chapter 9 of the Acts of 2025 violate the due process rights under the Massachusetts Declaration of Rights of the Plaintiff and putative class members who were employees at BU paid monthly in violation of the Wage Act who have pending claims for penalty damages arising out of violations of the Wage Act occurring prior to the enactment of Section 113?

---

[3] The Massachusetts Constitution expressly permits the legislature to alter or repeal statutes.  *See Pinnick v. Cleary*, 360 Mass. 1, 14 (1971) ("[C]hanges in prior law are necessary in any ordered society, and to argue that art. 11 prohibits alterations of common law rights as such, especially in the face of the specific provision to the contrary in art. 6, flies in the face of all reason and precedent.").

(2)     Does Section 113 constitute an impermissible selective
        exemption to Massachusetts standing laws in violation of
        Article X of the Massachusetts Declaration of Rights?

(3)     Does Section 113 violate the Article XI of the Massachusetts
        Declaration of Rights insofar as it extinguishes all legal and
        equitable remedies available to Plaintiff and the putative
        class under the Massachusetts Wage Act based on monthly
        pay violations?

Dkt. # 56 at 4-5.

The SJC permits federal courts to certify questions of Massachusetts

law "which may be determinative of the cause then pending in the certifying

court and as to which it appears to the certifying court there is no controlling

precedent in the decisions of [the SJC]."  Mass. S.J.C. Rule 1:03; *see also*

*Nicholls v. Veolia Water Cont. Operations USA, Inc.*, 144 F.4th 354, 358 (1st

Cir. 2025).  Certification is necessary only "when 'the course [the] state

court[] would take is [not] reasonably clear.'" *Easthampton Sav. Bank v.*

*City of Springfield*, 736 F.3d 46, 51 (1st Cir. 2013) (alterations in original).

Here, the SJC has "clearly articulated the method by which

Massachusetts statutes are to be interpreted."  *Nicholls*, 144 F.4th at 358,

citing *MacLaurin v. City of Holyoke*, 475 Mass. 231 (2016).  Because the

state court and First Circuit have provided the framework to analyze the

constitutionality of the retroactive application of a statute and alleged

violations of Article X and Article XI of the Massachusetts Declaration of
Rights, certification of the questions of law are not warranted.[4]

## 3. Motion to Amend the Complaint

Curtin-Wilding seeks leave to file an Amended Complaint to: (a) add
BU President Melissa L. Gilliam and BU Treasurer Nicole K. Tirella as named
defendants; (b) add a cause of action for unjust enrichment under
Massachusetts common law; (c) amend the late payment allegations; and (d)
add 28 U.S.C. § 1332(a) as a basis for this court's jurisdiction. *See* Dkt. # 42
at 1.

A party seeking to amend a complaint more than 21 days after "service
of a responsive pleading or . . . motion under Rule 12(b), (e), or (f)" must seek
leave of court to do so.  Fed. R. Civ. P. 15(a).  When deciding a motion to
amend, the court's task is to determine whether "justice . . . requires" that
leave to amend be granted.  *Id.*  A motion to amend may be denied where the
exercise is futile.  *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d
12, 19 (1st Cir. 2001).  Futility means that the complaint, as amended, would

---

[4] The court additionally notes that Curtin-Wilding filed this suit, solely
raising a state-law claim under the Massachusetts Wage Act, in federal court.
A party "who chooses the federal courts in diversity actions is in a peculiarly
poor position to seek certification . . . ."  *Ken's Foods, Inc. v. Steadfast Ins.
Co.*, 36 F.4th 37, 44 (1st Cir. 2022), quoting *Cantwell v. Univ. of Mass.*, 551
F.2d 879, 880 (1st Cir. 1977).

fail to state a claim upon which relief could be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). When leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the district court, in reviewing for futility, applies "the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

### A. BU's President and Treasurer

First, Curtin-Wilding seeks to add BU's President Gilliam and Treasurer Tirella as defendants to her Wage Act claim and argues that Section 113 "grants immunity only to 'nonprofit institutions' (not individuals)." *See* Dkt. # 42-1 at 2.

The court "will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." *Att'y Gen. v. Sch. Comm. of Essex,* 387 Mass. 326, 336 (1982); *see Wild v. Constantini,* 415 Mass. 663, 668 (1993) ("Reason and common sense are not to be abandoned in the interpretive process, as it is to be supposed that the Legislature intended to act in accordance with them."). When such is the case, "[t]he legislative intention in enacting the statute must be ascertained, 'not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part . . .'" *Killam v. March,* 316 Mass. 646, 650

(1944). No reasonable legislative purpose of Section 113 would be served by immunizing BU, an institution of higher education, yet holding its President and Treasurer[5] liable for purported violations of the Wage Act. To interpret Section 113 in that way "would produce a result at odds with the intent of the statute" and defy common sense. *Cook v. Patient Edu, LLC*, 465 Mass. 548, 554 (2013).[6]

---

[5] Gilliam and Tirella were not BU officers serving at the time of Curtin-Wilding's claim, which spans from February 18, 2022, until August 1, 2023 – Tirella was named BU's Treasurer in January of 2024, while Gilliam became BU's President on July 1, 2024. *See* Dkts. # 51-1 at 3; 51-2 at 4; *DeMego v. Nisonson*, 2017 WL 3090212, at *2 (Mass. Super. May 25, 2017) ("Nothing in the Wage Act or in appellate decisions construing the statute indicates that someone newly hired as the president of the company becomes personally liable on their first day on the job for all wages that were allegedly earned but not paid before that time.").

[6] The Wage Act provides that:

The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.

Mass. Gen. Laws ch. 149, § 148. Massachusetts courts have interpreted this provision to mean that "a president and treasurer of a corporation are 'jointly and severally liable with the corporation for the payment of unpaid wages.'" *Ellicott v. Am. Cap. Energy, Inc.*, 2017 WL 1294437, at *3 (D. Mass. Apr. 3, 2017), *aff'd*, 906 F.3d 164 (1st Cir. 2018), citing *Bisson v. Ptech, Inc.*, 2004 WL 2434638, at *1 (Mass. Super. Ct. Oct. 19, 2004); *see also Perrin v. Collaborative Eng'rs, Inc.*, 84 Mass. App. Ct. 1121, 1121 n.2 (2013) (interpreting Wage Act as "defining class of individuals subject to joint and several liability with corporation" to include "the president and treasurer of a corporation"). Where no viable claim exists against the corporate

### B. Unjust Enrichment Claim

The court finds that adding a cause of action for unjust enrichment is futile. A fundamental prerequisite to any unjust enrichment finding is that the enrichment be "unjust." *See Bonina v. Sheppard*, 91 Mass. App. Ct. 622, 625 (2017) ("The plaintiff must establish 'not only that the defendant received a benefit, but also that such a benefit was unjust.'"), quoting *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013). There are no facts to suggest that Curtin-Wilding had a reasonable expectation that she would be paid other than on a monthly basis nor, as the court previously stated, does she allege that BU failed to pay her in accordance with that monthly schedule or for less than the amount she was owed. *See* FAC ¶ 32. Even assuming BU enjoyed some small incidental benefit in the few days of retention of Curtin-Wilding's wages, it is not what a court sitting in equity would deem an affront to "the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988).

### C. Late Payment Allegations

In her original Complaint, Curtin-Wilding alleged that BU had a practice of paying her "wages on or about the last business day of each

---

defendant, it follows that there can be no joint and several liability chargeable to its offense.

month, even though Plaintiff and Class members did not choose or elect at their own option to be paid monthly. . ." Compl. ¶ 26.  Without any additional factual allegations or explanation, Curtin-Wilding seeks to amend her Complaint to allege that she was paid at intervals "less frequently" than monthly.  *See* Dkt. # 42-2 (proposed Amended Complaint) at 7.  The court need not credit such a conclusory, unsubstantiated allegation.  *See SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Because it is a futile exercise, the court will deny Curtin-Wilding's motion to amend the Complaint.

## ORDER

For the foregoing reasons, BU's motion for judgment on the pleadings is <u>ALLOWED</u>.  Curtin-Wilding's motion to amend the Complaint is <u>DENIED</u>.  Curtin-Wilding's motion to certify the questions of law to the SJC is also <u>DENIED</u>.  The Clerk will enter judgment for BU and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE