# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EMILY MACINTYRE and KEITH FITTS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> CURRY COLLEGE, <br><br> Defendant. | Civil Action No.: 1:25-10585-NMG |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

Relying on a decision from another case with different facts, Defendant asks this Court to dismiss Plaintiffs' claims under newly enacted Section 113 of Chapter 9 of the Acts and Resolves of 2025 ("Section 113"). But Section 113 does not provide blanket immunity. Even assuming that Section 113 passes constitutional muster, which Plaintiffs dispute, it applies only so long as:

> earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

Defendant cannot meet either of these conditions on the pleadings. For example, for the Fall 2024 semester, Defendant paid wages in four equal installments – October 1, November 1, December 1, and January 1, while the academic calendar shows that classes began August 26 and final grades were due December 19, 2024. Wages earned in August were not paid within 6 days of August 31. Defendant therefore did not comply with subdivision (i). Defendant also did not comply with subdivision (ii). Even if Defendant claims that the October paycheck covered work

in September, despite the paycheck stating on its face that it covers pay period dates from October 1 to October 31, that paycheck did not cover "earned wages" in "full" because Plaintiffs had already performed a substantial portion of the term while only ¼ of their total compensation had been paid – meaning that "earned wages" were not paid "in full" within 6 days after the relevant period ended.  The same is true for all fall and spring semesters occurring during the Class Period.

Even is Defendant had satisfied Section 113, it is unconstitutional.[1]  This action involves one of a handful of employers who have, for decades, knowingly flouted M.G.L. c. 149, § 148, which requires prompt payment of wages on a weekly, biweekly, or semi-monthly basis. When faced with the consequences of their actions, those employers sent their lobbyist to the state house and, in a one-sided hearing, convinced the Legislature to carve out a special exemption for them that does not apply to other employers facing the same claims. Section 113 strips thousands of academic and healthcare workers of any remedy for illegal payment of late wages for no reason other than the Legislature favors their employers. This highly unusual legislative intervention into multiple ongoing lawsuits is precisely the kind of overreach that the Declaration of Rights to the Massachusetts Constitution expressly prohibits. Granting certain defendants – and not others – with their very own Wage Act immunity, Section 113 is an archetypal example of an impermissible exemption to the standing laws under Article 10. It runs afoul of due process protections under Article 12 (as well as the U.S. Constitution) because it is a retroactive statute that unnecessarily eliminates Wage Act protection and the vested property rights of thousands of employees in their ongoing lawsuits while serving no public interest. Finally, Section 113 violates the remedies clause of Article 11 by depriving those employees of any remedy for the wages they

---

[1] A decision of another District Court Judge on which Defendant relies (*Curtin-Wilding v. Trustees of Boston University,* Case No. 25-10432-RGS (Aug. 27, 2025) is not binding on this Court, nor was it, in Plaintiffs' view, correct.

were paid late.

## **STATEMENT OF FACTS**

### A.  **Plaintiffs' Claims and Defendant's Pay Schedule**

Defendant Curry College fails to pay certain of its employees (Associate Lecturers, Lecturers, Senior Lecturers, and full-time faculty who taught overload courses during the Class Period) in a timely manner, in violation of M.G.L. c. 149, § 148.  ECF No. 21 (First Amended Complaint) ¶ 1.  The work/teaching schedules for Lecturers are as follows.  Fall semesters typically begin at the end of August and final grades are due toward the end of December.  *See Id.* ¶ 20; Exs. 4 and 5 to the Declaration of Julian Hammond ("Hammond Decl.").  And, syllabi must be submitted by the first week of classes.  *See, e.g.,* Exs. 1 to Hammond Decl.  This means that Lecturers and other faculty must prepare their syllabi before classes begin.  Defendant does not begin to pay Lecturers and other faculty until October: the pay distribution is "October-January" with fixed amounts paid in October, November, December, and January.  FAC ¶¶ 20-21. Paychecks issued in October provide the beginning and end pay period dates of October 1 to 31. Paychecks issued in November provide the beginning and end pay period dates of November 1 to 30, and so on. *See* Ex. 2 to Hammond Decl.

Spring semesters begin around the third week of January and final grades are due around the middle of May. *See* Exs. 4 and 5 to Hammond Decl. As in the fall, during spring semesters, syllabi must be submitted by the first week of classes.  *See* Ex. 3 to Hammond Decl. This means that Lectures and other faculty must prepare their syllabi before classes begin.  Defendant does not begin to pay Lecturers and other faculty until March: the pay distribution is "March – June," with fixed amounts paid in March, April, May, and June.  *Id.*  Paychecks issued in March provide the beginning and end pay period dates of March 1 to 31.  Paychecks issued in April provide the beginning and end pay period dates of April 1 to 30, and so on*.*

**B.** <u>Section 113 History</u>

Plaintiffs filed their Complaint on March 11, 2025, on behalf of themselves and others similarly situated seeking damages for late payment of wages. Four other universities, one healthcare organization, and Walgreens, have recently been sued for the same illegal conduct.[2] These defendants sent their lobbyist to Beacon Hill and his testimony is the sole piece of legislative history for what would become Section 113, which is buried in a lengthy budget bill.

The lobbyist convinced the Legislature to take sides in ongoing judicial proceedings for the benefit of the university and healthcare defendants—but not for Walgreens. Under the special rule it created, the favored university defendants receive immunity from liability for monthly pay claims brought against them within a specified time period. Monthly pay claims brought against other defendants in that time period, including the suit against Walgreens, will continue to be litigated without this special immunity.

<u>ARGUMENT</u>

**A.**    <u>Applicable Legal Standard</u>

A complaint will survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss where it states a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The factual allegations must be enough to "raise a right to relief above the speculative level," even where the allegations appear doubtful in fact. *Id.* at 555 (citations omitted). In considering Defendant's Motion, the Court must read the Complaint in the light most favorable to the Plaintiffs.  The Court must accept as true the factual allegations set forth in the Complaint and

---

[2] There are presently ongoing cases against Trustees of Amherst College and Harvard University, all alleging that the defendants violated the Wage Act under the same legal theory. The third case (against Worcester Polytechnic Institute) has recently settled, and the fourth case, against Boston University, was recently dismissed by the District Court of Massachusetts (Hon. J. Stearns).

4

draw all reasonable inferences in Plaintiffs' favor. *See TAG/ICIB Services, Inc. v. Pan American Grain Co., Inc.,* 215 F.3d 172, 175 (1st Cir. 2000) (reversing allowance of motion to dismiss). A motion to dismiss will lie only where "based on the factual scenario on which the case rests, the plaintiff could never win." *See Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 72 (1st Cir. 2014); *see also New England Gen-Connect, LLC v. US Carburetion, Inc.,* No. 16-12270-GAO, 2017 WL 4364176, at *1 (D. Mass. Sept. 29, 2017) (observing the purpose of a Rule 12(b)(6) motion is "to test the sufficiency of the statement of a claim for relief; it is not a procedure for resolving the facts or merits of a case").

**B.    Plaintiffs' Allegations Show that Defendant Does Not Meet Section 113 Requirements**

Assuming, arguendo, that Section 113 is constitutional, it affords immunity from failure to pay timely wages under MGL c. 149, § 148, only if "earned wages" have been paid in "full within 6 days of the termination of a pay period occurring … on a monthly basis" (Section 113(i)) or if "earned wages" in "full within 6 days of the termination of a pay period occurring . . . pursuant to any written policy, schedule or agreement . . ." (Section 113(ii)).  Taking the well-pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, the operative First Amended Complaint adequately alleges that Defendant does not satisfy either requirement of Section 113 and Defendant's own description of its pay schedules confirms the same.

Defendant admits that it pays Lecturers and faculty on October 1, November 1, December 1, and January 1, for fall semesters, and on March 1, April 1, May 1, and June 1 for spring semesters. Mot. at p. 9.  The First Amended Complaint alleges that the fall semester begins at the end of August and spring semesters begin around the third week of January.  FAC ¶¶ 20, 22.  Not only do classes beginning in August and/or January, but Lecturers and faculty must prepare syllabi prior to the start of classes. *See* Ex. 1-3 to Hammond Decl. (requiring instructors to submit syllabi by the first week of classes).  However, Defendant does not pay wages earned in August within 6

days of August 31 (i.e., within 6 days of the end of the pay period occurring on a monthly basis). And, Defendant also does not pay "earned wages" in "full" within 6 days of the termination of the pay period because Defendant issued the first paycheck for Fall semesters on October 1, and by that time Plaintiffs had already performed a substantial portion of the term while only ¼ of their total compensation had been paid.

Defendant's pay schedule is similar during spring semesters. Defendant does not pay wages earned in January within 6 days of February 28/29, and Defendant does not pay "earned wages" in January in "full" within 6 days of the termination of the pay period because Defendant issued the first paycheck for spring semesters on March 1, and by that time Plaintiffs had already performed a substantial portion of the term while only ¼ of their compensation had been paid.

Because Defendant's own pay schedules and academic calendar show that it failed to pay all wages earned within 6 days of the termination of a monthly pay period, and failed to pay wages earned in full within 6 days of the termination of pay periods occurring under its own schedule, it cannot seek to avoid liability under Section 113 for its violations.

## C.    Even Were Section 113 to Apply, It is Unconstitutional

Even were Section 113 to apply to immunize Defendant, it is unconstitutional and cannot be enforced.

### 1.    Section 113 is an Impermissibly Selective Exemption to Standing Laws in Violation of Article 10 of the Declaration of Rights of the Massachusetts Constitution

Section 113 suspends enforcement of certain provisions of the Wage Act against several defendants who are engaged in active litigation, at the expense of thousands of healthcare and academic workers who were paid illegally. In a system of ordered liberty, the Legislature is not empowered to take sides in a private dispute by singling out certain parties for benefits or disadvantages in legal proceedings. *Dickinson v. New England Power Co.,* 257 Mass. 108, 112

(1926) ("[I]t is settled that the Legislature has no power to suspend the operation of a general law in favor of an individual."). Yet this is exactly what Section 113 does: it exempts defendants from liability under the Wage Act, while leaving the law in full effect for virtually every other employer in the Commonwealth.

Section 113 is a textbook example of an impermissible selective exemption from standing laws, granting particular parties advantages or disadvantages of in violation of Article 10 of the Declaration of Rights to the Massachusetts Constitution, which provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws." Massachusetts courts have interpreted "standing laws" to mean acts of legislation of general application, like the Wage Act. *Commissioner of Pub. Health v. Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 742 (1975). The legislature has "'no authority by the constitution to suspend any of the general laws, limiting the suspension to an individual person, and leaving the law still in force in regard to everyone else.'" *Paddock v. Town of Brookline*, 347 Mass. 230, 236 (1964) (*quoting In re Picquet*, 22 Mass 65, 71-72 (1827)). While special legislation benefitting certain individuals or parties is permissible, a law "loses constitutional validity" under Article 10 when "in conferring a benefit it simultaneously exempts the beneficiary from complying with a procedure generally prescribed." *Burke Memorial Hosp.*, 366 Mass. at 741.

The Massachusetts Supreme Judicial Court has applied Article 10 to invalidate laws which, like Section 113, exempt certain parties from the application of general laws. For example, in *Paddock v. Town of Brookline*, the SJC invalidated a statute exempting a plaintiff from a statutory notice requirement for her lawsuit. 347 Mass. at 236-237. The Court held that the statute impermissibly "exempted" the plaintiff "from the obligations of a general law while allowing the general law to remain in full force and effect as to all other persons" and "impose[ed] 'a new and different rule for the government of one particular case.'" *Id*. at 236 (*quoting Holden v. James*, 11

Mass. 396, 405 (1814)). Likewise in *Opinion of the Justs. to the Senate*, 373 Mass. 883, 885 (1977), the Court opined that Article 10 did not permit legislation that would have allowed a particular high school to continue operating a female-only program in violation of otherwise applicable legislation. As the Court explained, the bill "on its face singles out the young men of [the school] and diminishes their rights under G.L. c. 76, § 5, while leaving the statute in full force and effect for all other public-school students of the Commonwealth." *Id*. at 885. Likewise, Section 113 "exempts" exactly six defendants from "the obligations" of the Wage Act, while allowing those provisions "to remain in full force and effect as to all other persons." It also "singles out" the employees of six healthcare and educational institutions and "diminishes their rights" under the Wage Act. While it does not mention the six colleges by name, claims, defendant concedes that "Section 113 is narrowly tailored to provide immunity to the entities targeted by the class action lawsuits", meaning that the statute effectively names these six entities. Def. Mot. at 14. It provides "a new and different rule" for those lawsuits that does not apply to any other Wage Act suit, including at least one pending against an employer not covered by Section 113.[3]

In any event, the SJC has applied Article 10's prohibition on exemptions to the standing laws to legislation that singles out favored or disfavored groups. In *Opinion of Justs.*, 211 Mass. 618, 620 (1912), the SJC held that a pending bill immunizing trade unions and employer associations from tort claims violated Article 10 because it "gives to certain favored [entities], selected arbitrarily, immunity from that equal liability for civil wrongs which is a sign of equality between citizens and residents." 211 Mass. 618, 619, (1912). The SJC reasoned that the bill ran afoul of Article 10 because it "frees one set of employers from obligations to which their

---

[3] *Jamie Monks, individually and on behalf of all others similarly situated v. Walgreen Eastern Co., Inc.* Civil Action No. 1:25-cv-12004-MJJ, United States District Court, District of Massachusetts.

competitors, who are independent of the association, are subjected." *Id.* Section 113 presents the same constitutional problems because it "frees" six academic institutions from liability under the Wage Act, allowing them to enjoy the benefits of their illegal pay practices, while the overwhelming majority of their competitors comply with the law. *Id.* Section 113 also leaves employers in every other industry in Massachusetts subject to liability just because they lack the legislative favor of the exempted defendants. In finding otherwise, Judge Stearns in *Curtin-Wilding* cited *Donahue v. City of Boston*, 264 F. Supp. 2d 74, 83 (D. Mass. 2003), holding that a statute at issue was not a "special legislation" because it applied equally to all non-profit institutions. But in reality, Section 113 selects six favored defendants for special treatment under the Wage Act. This legislative adjudication of individual cases is exactly the kind of overreach Article 10 was designed to address.

### 2.  Section 113 Advances the Interest of A Handful of Employers Over the Public Interest.

"The critical inquiry [in assessing the strength of an art. 10 challenge] is whether the challenged statute can be said to have some legitimate public purpose that predominates over the benefit it otherwise confers on private parties and over any injury to another party." *Kienzler v. Dalkon Shield Claimants Tr*., 426 Mass. 87, 90–91, 686 N.E.2d 447, 450 (1997). By granting a handful of employers a free pass to violate the Wage Act, Section 113 serves no *public* interest. Instead, it serves the *private* interest of a handful of favored employers at the expense of their disfavored employees. It also chills enforcement of the Wage Act by undermining the incentives for private parties to bring claims protecting workers at no cost to taxpayers.

Defendant concedes that Section 113 was passed with the narrow intention of protecting the "entities targeted by the class action lawsuits challenging monthly pay." Def. Mot. at 14. It is hard to see how protecting these employers from accountability for unlawful employment

practices furthers the public interest. Defendant cites *Curtin-Wilding,* C.A. No. 1:12-cv-10432-RG, where Judge Stearns references the "devastating financial impact of these Wage Act claims to Massachusetts institutions of higher education", but that is simply a recitation of the testimony of a single lobbyist paid for by the very institutions who needed the new legislation. Clearly, legislation seeking to protect defendants from suits arising out of their *non-compliance* with the Wage Act serves no public interest.

Second, while protecting the Commonwealth's institutions of higher education may be a valid public interest, that is not what Section 113 does. "[T]he inquiry is not only whether the Legislature's stated public interest is important, but also whether that interest is reasonably served by the statute." *Doe,* 450 Mass. at 790 n. 16. There are only a handful of institutions of higher education affected by this law. Based on publicly available information, the remaining 100 institutions of higher education in Massachusetts comply with the Wage Act and are not vulnerable to lawsuits for paying monthly.[4]

Section 113 does nothing to address the federal "threats to international students" or "cuts to research funding" which Defendant's lobbyist identified as harmful to the Massachusetts economy. Def. Mot. at 6. But the Commonwealth will continue to reap the benefits whether or not these schools are required to compensate workers for their own wage act violations. Any damages awarded would remain in the Commonwealth in the hands of the very workers who produce the economic benefit the lobbyist touted. It makes no sense to argue that legislation protects institutions of higher education when it singles out the thousands of employees whose labor

---

[4] *See, e.g.*, https://www.umass.edu/hr/benefits-and-pay/payroll/pay-process-schedule (UMass Amherst pays faculty biweekly); https://service.northeastern.edu/hr?id=pay_hr (Northeastern: semi-monthly); https://access.tufts.edu/pay-days-pay-cycles (Tufts: semi-monthly); https://www.suffolk.edu/about/directory/payroll-office (Suffolk: biweekly); https://finance.emerson.edu/hc/en-us/categories/360001468472-Payroll (Emerson: semi-monthly).

generates income for those institutions as disfavored workers and strips them – and nobody else – of their Wage Act claims. Section 113 does not protect higher education in Massachusetts. It protects a handful of employer defendants from accountability for their unlawful behavior. Without more, that is not a sufficiently public interest to justify a legislative pre-determination of pending lawsuits.

Nor does Section 113 correct "unintended consequences" of the Wage Act, as Defendant's lobbyist testified to the legislature. Def. Mot. at 6. First, it permits identical claims brought against non-favored employers to continue. Second, it leaves the Wage Act untouched. The legislature left the treble damages penalties in place and declined to overrule *Reuter*, which is consistent with two prior failed attempts to legislatively overrule *Reuter. See, e.g.*, H.2163, 194th Gen. Ct. (Mass. 2025); S.1332, 194th Gen. Ct. (Mass. 2025); H.4443, 193d Gen. Ct. (Mass. 2024); H.1944, 193d Gen. Ct. (Mass. 2023); S.1125, 193d Gen. Ct. (Mass. 2023). The legislature also declined to amend the pay frequency provisions or clarify what is required for an employee to elect monthly pay "at their own option." Further, during the FY26 budget process, the House proposed Amendment #460 to H.4000, which would have directly amended M.G.L. c. 149 § 148 to codify the same immunity later adopted in Section 113. Amend. #460 to H.4000, 193d Gen. Ct. (Mass. 2025). The legislature ultimately rejected that approach, declining to alter the statute itself. *Id.* The only conclusion that can be drawn is that the legislature determined that these provisions of the Wage Act continue to serve the public interest and remain sound social and economic policy necessary to protect Massachusetts workers.

Defendant's lobbyist testified that the Wage Act was designed to target "unscrupulous employers" and "there are no allegations of any of that in these cases." Def. Mot. at 6. But the Wage Act "not only 'protects wage earners from the long-term detention of wages by unscrupulous employers'…but also 'imposes strict liability on employers' who must 'suffer the consequences

of violating the statute regardless of intent." *Reuter*, 489 Mass. at 468-69 (*quoting Dixon v. Malden*, 464 Mass. 446, 452 (2013); *Melia v. Zenhire*, Inc., 462 Mass. 164, 170 (2012)). Nor is the claim in this case a "technical violation." Def. Mot. at 4. The pay frequency provision of the Wage Act has been in effect for many decades. *See* St.1955, c. 506. There can be no doubt that these institutions were advised by their attorneys that their pay practices were illegal. Curry College and the other defendants are sophisticated employers with competent attorneys; thus, we can only assume that they made the financial calculation that the risk of Wage Act litigation was worth the savings they enjoy by running payroll only four times per semester and retaining their employees' wages for longer. Dozens of other colleges and universities in the Commonwealth made the opposite choice and followed the law. Even after *Reuter* was decided and their potential liability increased, the defendants stuck with their decision to violate the law. Almost three years passed before the first lawsuit (against Amherst College) was brought to enforce the Wage Act. These lawsuits were not "predatory." Def. Mot. at 10. They were a long-overdue attempt to correct decades-long violations of the Wage Act.

Not only does Section 113 do nothing to advance the public interest, it also undermines the public interest in the fair enforcement of the Wage Act by chilling future plaintiffs from bringing suit. The Wage Act's fee-shifting provision allows workers who cannot otherwise afford legal representation to engage private attorneys to bring suits against their employers for wage violations. And it is through fee shifting and strict liability damages that employers who violate the law, not Massachusetts taxpayers, bear the cost of enforcement of the Wage Act. The Commonwealth depends on plaintiffs like Mr. Fitts and Ms. MacIntyre in this case to hold employers accountable. This is precisely the kind of private enforcement that the Legislature incentivizes through the treble damages and fee shifting provisions of the Act. Yet the Legislature seeks the benefit of securing compliance from large employers without compensating the plaintiffs

whose labor achieved that outcome.

Why would an employee take the personal and professional risk of bringing a Wage Act claim when the Legislature could decide at any point in the litigation to grant retroactive immunity to their employer? Worse, according to the logic of defendant and its lobbyist, the more important the employer is to the Massachusetts economy and the more extensive their Wage Act violations are – and thus the higher their potential damages are – the more justified the Legislature is in intervening to halt the suit. It is one thing for an employee to go up against their employer's lawyers in court, but it is quite another for them to go up against their employer's lobbyist on Beacon Hill. There is no fee-shifting provision for hiring lobbyists. If Section 113 is permitted to stand, it will chill future claims, especially against the largest and most well-connected employers in the Commonwealth. This will undermine the effectiveness of the Wage Act and impairs the public interest in ensuring that there is a level playing field for all Massachusetts employers and their employees.

   3. **Section 113 is an Unreasonable and Inequitable Retroactive Statute Under the United States and Massachusetts Constitutions.**

   Compounding its constitutional problems, Section 113 comes in the form of a retroactive statute. Both the United States Supreme Court and the SJC have cautioned that "retroactive statutes" like Section 113 "raise particular concerns." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *Doe v. Sex Offender Registry Bd.*, 450 Mass. 780, 786 (2008). "The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 244. This is because the "Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." *Id.* at 266. In short, "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The Due Process Clause of the United States Constitution and Article 12 of the Massachusetts Declaration of Rights demand that retroactive legislation survive a three-part balancing test to determine if it is "equitable to apply the retroactive statute against the plaintiffs." *American Mfrs. Mut. Ins. Co. v. Commissioner of Ins.*, 374 Mass. 181, 191 (1978). Courts consider (1) "the nature of the public interest" served by the retroactive law; (2) "the nature of the rights affected retroactively," and (3) "the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored." *Dutra v. Trustees of Bos. Univ.*, 96 F.4th 15, 20 (1st Cir. 2024).

Here, the retroactive application of Section 113 would deprive thousands of academic and healthcare workers of their property interest in several ongoing lawsuits under the Wage Act for late payments of wages. The weight of those private interests dwarfs the negligible public interest actually served by the retroactive law. The only interest that Section 113 is tailored to serve is the private interest of six employers whose lobbyist managed to convince the Legislature to give them a get-out-of-jail-free card in a hasty amendment to a budget bill while leaving the Wage Act untouched. Section 113 constitutes a legislative pre-judgment of these cases and deprives thousands of plaintiffs of due process of law.

## 4. Section 113 Targets Thousands of Academic Workers and Eliminates Their Property Rights.

Section 113 serves no public interest as explained above and should fail on that ground. But even if retroactive immunity for private defendants can be said to somehow advance the public interest, the Court must weigh that against the substantial private rights impacted by the law. Section 113 purports to extinguish at least four ongoing similar lawsuits. This terminates the property rights that thousands of employees in the putative classes have in those lawsuits, and deprives them of the substantive protection of the Wage Act. When the plaintiffs filed their claims,

they could not have foreseen that the Legislature would intervene to immunize their employers from suit. They acted in reliance on the Wage Act's continued application, and may now be deprived of their day in court and the compensation to which they would otherwise be entitled.

Plaintiffs and putative classes in the four pending lawsuits that Section 113 targets have a vested property right in their claim. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment Due Process Cause.); *Prichard v. Norton*, 106 U.S. 124, 132 (1882) ("[A] vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference.") Other courts in Massachusetts have recognized the need to apply a balancing test when a statute applies retroactively to a cause of action. *See, e.g. Dutra*, 96 F.4th at 18 (right to pursue cause of action for unjust enrichment); *Parello v. McKinney*, 46 Mass. App. Ct. 785, 788 (1999) (right to pursue a cause of action for strict liability under the Massachusetts State Building Code). Such property rights are among the core private interests that the due process provisions of the Massachusetts and United State constitutions are designed to protect. Unlike the "not previously recognized 'implied' not express contract rights" at issue in *Dutra*, 96 F.4th at 23, the Wage Act claims at issue in this case are longstanding and continue to be available to all employees except those in the disfavored categories carved out by the Legislature. And there exists no intervening external force, like the COVID-19 pandemic in *Dutra*, that has changed the reasonable expectation of the parties in this right.

Plaintiffs filed this lawsuit with the reasonable expectation and in reliance on the fact that the Wage Act applied equally to Curry College as to any other employer. Indeed, the *only* reason that Section 113 was passed is because Plaintiffs and their colleagues at other schools acted in reliance on the Wage Act's equal protection of all employees in the Commonwealth. Had Plaintiffs known that the Legislature was prepared to deny them protection under the Wage Act, they would

not have taken the time, expense and personal and professional risk to come forward and vindicate their rights and the rights of their fellow employees. Defendant makes the nonsensical argument that the Plaintiffs did not act in reliance on the previous state of the law because they did not complain about their pay frequency before bringing their bring claims. Def. Mot. at 14. But it defies explanation, and Defendant offers none, why informally complaining about a Wage Act violation would demonstrate any more reliance on continued Wage Act protections than actually filing a lawsuit.

The legislature appears to have favored the private interests of the defendants over the private interests of the plaintiffs in many ongoing lawsuits. But that is not the balancing test this Court must undertake. Instead, it must weigh the public interest served by Section 113 against the private interests it harms. The vested property rights of the plaintiffs and the thousands of putative class members whose legal claims have been extinguished by Section 113 and their interest in Wage Act protection far outweigh the negligible benefits to the public interest (if any) that flow from immunizing five favored defendants from liability for their illegal pay practices.

### 5.   Section 113 is Neither Appropriate Nor Narrowly Tailored.

Finally, the Court must determine the "extent of the abrogation of the asserted rights," and whether the retroactive statute is "narrowly drawn to treat the problem perceived by the Legislature." *Doe*, 450 Mass. at 792. In other words, was the retroactive statute an effective and appropriate way to serve the public interest without excessively impairing the private rights at issue? In this case, Section 113 neither effectively serves its purported public interest nor avoids excessive impingement on private rights.

Section 113 does not just limit or contain plaintiffs' rights; it completely eliminates them. The imposition is not partial or "short-term." *Id.* It is absolute. Prior examples of legislation that have eliminated certain causes of action have provided some remaining avenue for recovery. For

example, in *Dutra*, the immunity statute contained exceptions for lawsuits challenging malicious or bad faith conduct. 96 F.4th at 21. And federal legislation that has eliminated causes of action for certain plaintiffs has at the same time created alternative means for recovery such as the National Childhood Vaccine Injury Compensation Program and the September 11 Victim Compensation Fund. See Air Transportation Safety and System Stabilization Act (49 USC 40101); National Childhood Vaccine Injury Act of 1986 1986 (42 U.S.C. § 311(a)). No such recourse remains for Plaintiffs and the putative Class.

Section 113 is not "narrowly drawn to treat the problem perceived by the Legislature." It does not protect institutions of higher education in this time of uncertainty because it does nothing to address threats to international students. It affects only a few of the more than 100 institutions of higher education in Massachusetts. The rest of those institutions will continue to bear the costs of compliance with the law, while the handful of favored defendants will retain the economic and administrative benefits of their illegal behavior. And the parties harmed by Section 113 are the very employees who comprise those several institutions who will not only feel the impact of the federal policies, but they will also lose their Wage Act protection.

Additionally, if the animating concern was the high potential damages in monthly pay cases, Section 113 does not solve that problem either. It leaves those potential damages intact for all but the six defendants it immunizes. And providing absolute immunity is not even a narrowly tailored way to address that concern for those defendants. There are many ways to limit damages without eliminating the claims and the Wage Act protection for thousands of employees. The Legislature could have limited damages to interest only, or added an intent requirement as they did in *Dutra*. It also could have extended the charitable immunity statute to apply to the Wage Act claims of each individual plaintiff. M.G.L. c. 231 § 85K. Foreclosing thousands of academic and healthcare workers from any form of recovery was not required.

Finally, pre-judging pending lawsuits is not an appropriate role for the Legislature. *See Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1080 (1st Cir. 1977) ("[L]egislatures should not "adjudicate" the rights of known individuals."). The Legislature hastily passed Section 113 after considering only the testimony of defendant's lobbyist, which contained both factual and legal inaccuracies that went uncorrected. This is the reason that individual disputes are decided by courts, not legislatures. Absent Section 113, the parties' disputes would remain in the courts and enjoy effective and fair procedures for gathering facts, surfacing and testing arguments, and discerning truth. Defendants are represented by capable counsel who have put forth arguments that, if they succeed, would result in no liability for their clients. Any damages awarded could not exceed the bounds of due process. Defendants also have an opportunity to avoid costly litigation and settle the cases for far less than the full value of the statutory damages, which often happens in Wage Act cases. There was no exigency that required the Legislature to circumvent the fair and appropriate judicial process in these cases.

Defendant relies on the *Dutra* holding to claim that Section 113 is constitutional despite its sweeping retroactive effect. However, the retroactive statute at issue in *Dutra* was far more narrowly tailored than Section 113. *See Dutra*, 96 F.4th at 18-19. In *Dutra,* the applicable statute affected legal claims that arose during a narrow four- to five-month period of time. *Id.* Here, Section 113 applies to any legal claims that accrued as far back as July 2021 (the entire statute of limitations period for any conceivable plaintiff or class member) and continues to affect the rights of parties through 2028. Moreover, the statute in *Dutra* impacted inchoate "unjust enrichment" claims that were predicated on defendant's "good faith" while Section 113 obliterates a statutory claim for late paid monthly wages in its entirety for all time. *Id.* at 24-25.

6. **By Stripping Plaintiffs and the Putative Class of all Remedy for their Untimely Pay, Section 113 Violates the Remedies Clause of Article 11 of the Massachusetts**

**Declaration of Rights.**

Section 113 introduces a procedural bar – immunity from liability – to four active lawsuits, thereby depriving the plaintiffs of any remedy for their claims. Article 11 of the Massachusetts Declaration of Rights guarantees "a certain remedy, by having recourse to the laws, for all injuries or wrongs … [to] person, property, or character." Prospective statutory elimination of legal remedies for claims that have not accrued may be permitted under Article 11. *See Pinnick v. Cleary*, 360 Mass. 1, 11 (1971).  But that is precisely the opposite of what Section 113 does. Section 113 preserves the cause of action for monthly pay claims under the Wage Act, while procedurally blocking certain plaintiffs whose claims have accrued and who have commenced litigation from any remedy at all.

Procedural hurdles far lower than the immunity granted here have run afoul of Article 11. For example, in *Murphy v. Comm'r of Dep't of Indus. Accidents*, 415 Mass 218, 233 (1993), the SJC struck down a filing fee that applied only to certain litigants.[5] Similarly, courts have disallowed under Article 11 a requirement that parties hire a mediator before they may file in court, *Ventrice v. Ventrice*, 87 Mass. App. Ct. 190, 193-94 (2015), and a requirement that parties engage in settlement discussions before their suit may proceed, *Graizzaro v. Graizzaro*, 36 Mass. App. Ct. 911, 911 (1994). Section 113 impinges to a far greater degree on the procedural right of plaintiffs to access the courts and obtain their remedy because it grants certain defendants' immunity, which, if allowed to stand, would result in the dismissal of their claims.

As the SJC noted in *Pinnick*, it is significant that Section 113 affects access to a remedy for claims that have already accrued and been filed, not just potential future claims. 360 Mass. at

---

[5] The parties fashioned that challenge as an equal protection violation and the Court struck down the provision on that ground, but noted that Article 11 provides co-extensive protection. *Murphy*, at 415 Mass. at 233.

11. This Court should preserve Plaintiffs' remedies for those claims, which are a vested property right, *see supra*, like the Pennsylvania Court did in *Ieropoli v. AC&S Corp.*, 577 Pa. 138, 142 (2004*)*. In that case, the plaintiff was engaged in asbestos litigation against multiple defendants when the legislature passed a statute capping successor asbestos-related liability that would have relieved one of those defendants from paying damages. *Id*. at 143-46. The Pennsylvania Supreme Court held that statute violated the remedies clause of Commonwealth's constitution because "each cause of action has in essence, been extinguished." *Id.* at 156. In that case, the plaintiff could "not obligate [the defendant] to pay them damages on those causes of action" because those damages were capped. *Id.* Here, Plaintiffs cannot obligate the defendant to pay their damages because Defendant was granted immunity. In both instances, the "cause of action has been stripped of its remedial significance." *Id.*

## CONCLUSION

For all the foregoing reasons, Defendant's Motion should be denied.


Dated: October 3, 2025                        Respectfully submitted,

                                              The Plaintiffs,
                                              EMILY MACINTYRE and KEITH FITTS,
                                              individually and on behalf of all others similarly
                                              situated,
                                              By their Attorneys,

                                                /s/ Fran Rudich_____

Fran Rudich (BBO 548612)

Julian Hammond (admitted *pro hac vice*)
jhammond@hammondlawpc.com
Ari Cherniak (admitted *pro hac vice*)
acherniak@hammondlawpc.com
Polina Brandler (admitted *pro hac vice*)
pbrandler@hammondlawpc.com
HAMMONDLAW, PC
1201 Pacific Ave., 6th Floor
Tacoma, WA 98402
Tel:  (310) 601-6766
Fax: (310) 295-2385

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was electronically filed through the

Court's ECF system and will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered

participants.

        /s/ Ari Cherniak
        Ari Cherniak