UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY MACINTYRE and KEITH FITTS, Individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>CURRY COLLEGE,<br><br>         Defendant. | Civil Action No. 1:25-cv-10585-NMG<br><br>**LEAVE TO FILE GRANTED ON NOVEMBER 5, 2025** |

### DEFENDANT'S REPLY IN SUPPORT OF ITS
### SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' reliance on facts and documents outside of the pleadings in this case must be rejected.[1] None of the documents are properly before this Court, and even if they were, they do not bring Plaintiffs' claims outside the scope of Section 113. Plaintiffs' claims fall squarely within Section 113, as both this Court[2] and the Massachusetts Superior Court[3] have already determined, and their attempts to circumvent the Legislature's intent in enacting § 113 are without merit.

**I.     SECT. 113 IS CONSTITUTIONAL AND PROVIDES IMMUNITY TO CURRY**

To avoid the plain language of Section 113, Plaintiffs assert a series of constitutional arguments, each of which are wholly without merit. First, Plaintiffs' contention that § 113 violates Article 10 of the Massachusetts Declaration of Rights because it is an "impermissible selective exemption" for "six healthcare and educational institutions" from the Wage Act is wrong on the facts and the law. Section 113 is not specific to any party and applies generally to pending claims

---

[1] Defendant has simultaneously filed a motion to strike the Declaration of Julian Hammond in Support of Plaintiffs' Opposition to Defendant's Supplemental Brief in Support of Motion to Dismiss (Dkt. 37-1) on the grounds that none of the documents referenced in that affidavit are appropriately before the Court on a Rule 12(b)(6) motion to dismiss. *See Trans-Spec Truck Service v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (lower court was entitled to ignore extraneous exhibits that were not incorporated in the complaint by reference).
[2] *See Curtin-Wilding v. Boston University*, C.A. No. 1:25-cv-10432-RGS (D. Mass. Aug. 27, 2025).
[3] *See Martin, et al v. Amherst College*, No. 2580-cv-00146 (Mass. Super. Oct. 30, 2025) and Notice of Supplemental Authority filed currently herewith.

against any non-profit institution of higher education or health care system and prohibits such claims that *may be filed* until 2028. Further, Plaintiffs' characterization of § 113 is debunked by the timeline of events. One of the six defendants whom Plaintiffs claim received a special exemption, Worcester Polytechnic Institute, had not even been sued as of the April legislative hearing on § 113. *See Miller v. WPI*, No. 2585-cv-00810 (Worc. Sup. Ct., June 16, 2025).

Nor do the cases Plaintiffs cite aid them. In *Paddock v. Town of Brookline*, 347 Mass. 230 (1964), the Legislature passed a law allowing a specific individual to bring a tort claim after she otherwise failed to satisfy a statutory condition for bringing the claim. This was improper because it "exempt[ed] a named individual" from the obligations of a general law. *Id.* at 236. Section 113 does not exempt any specific individual or entity; it addresses the conduct of a category of employers.[4] Plaintiffs' citation to *In re Opinion of Justs.*, 211 Mass. 618, 619 (1912), is perplexing for the same reason. The SJC found a proposed law exempting unions and employer associations from all tort claims to be unconstitutional, holding "[i]t frees one set of employers from obligations to which their competitors, who are independent of the association, are subjected. In short, it destroys equality and creates special privilege." *Id.* at 620. Section 113 does no such thing. The Legislature passed § 113 to correct what it viewed as manifest error in the application of the Wage Act, not to provide special privileges to particular, named institutions.[5]

Second, Plaintiffs' claim that the retroactive application of § 113 is unconstitutional was soundly rejected in both *Curtin-Wilding v. Boston University*, C.A. No. 1:25-cv-10432-RGS (D. Mass. Aug. 27, 2025) and *Martin, et al v. Amherst College*, No. 2580-cv-00146 (Mass. Super. Oct.

---

[4] The SJC later distinguished *Paddock*, explaining that "a statute which confers a benefit on a named individual is *not* unconstitutional, provided that 'a legitimate public good is to be derived from' such a statute." *See Wachusett Reg'l Sch. Dist. Comm. v. Erickson*, 353 Mass. 77, 80 (1967) (legislation passed "to rectify a manifest injustice" constitutional even though it was for the benefit of two individuals).

[5] Plaintiffs' reliance on *Op. of the Justs. to the Senate*, 373 Mass. 883, 885 (1977), fares no better. In that case, the SJC opined the legislation *might* violate Article 10 because it diminished the rights of young men while elevating the rights of others, and the court could "discern no promotion of a public purpose which would bring this case into the limited exceptions" to Article 10. *Id.*

1

30, 2025). In *Curtin-Wilding*, the court determined that § 113 passes the three-part test. *Dutra v. Trs. of Bos. Univ.*, 96 F.4th 15, 20 (1st Cir. 2024). First, "Section 113 serves the public interest by addressing 'the devastating financial impact' of these [] claims to Massachusetts institutions of higher education." *Curtin-Wilding*, at 7. The monthly pay lawsuits nullified by § 113 put ***billions*** of dollars at issue, without any claim that any employee was paid less than they were owed. The Legislature properly made a policy decision that the harms posed by these predatory lawsuits outweighed any potential harm to the fully-compensated employees who brought them. *See Dupont v. Comm'rs of Essex Cnty.*, 46 Mass. App. Ct. 235, 239-40 (1999). The Massachusetts Superior Court in *Martin* adopted the Court's reasoning in *Curtin-Wilding* wholly and dismissed the plaintiffs' claims pursuant to Section 113.

Plaintiffs' attempt to discredit Judge Stearns' holding in *Curtin-Wilding* finding that Section 113 protects the public interest is based entirely on a non-fact. Plaintiffs incorrectly state that Judge Stearns relied on "a recitation of the testimony of single lobbyist paid for by the very institutions who needed the new legislation." Opp. at 10. Rather, the *Curtin-Wilding* decision cites the testimony of Rob McCarron. McCarron is the president of the Association of Independent Colleges and Universities in Massachusetts, an association of 57 members, almost ten times the number of defendants who have been sued. *See* https://aicum.org/member-list/ (last accessed Oct. 15, 2025). Plaintiffs also ignore the fact that Representative McCurty – an elected representative – also stated that the purpose of the legislation was to correct "unintended consequences of the Wage Act." Representative McCurty acknowledged that "[w]e and the legislature . . . don't get it right all the time and occasionally there's an unintended consequence."[6] April Hearing Tr. 6 (attached as **Ex. A**). Further, the AFL-CIO expressly opposed the bill as "[c]arving out exemptions"

---

[6] The April 16, 2025 hearing was open to the public. The Joint Committee on Labor and Workforce Development heard testimony from others, not just AICUM.

for higher education. *Memo. re: Amendment #460 to H.4000 & Background* (April 28, 2025) (attached as **Ex. B**). All sides were heard in the legislative process, and the Legislature made its policy decision.

Plaintiffs' last-ditch assertion that § 113 does not serve the public interest because "the remaining 100 or so Massachusetts schools comply with the Wage Act," Opp. at 9, rests on speculation[7] and is a further, improper invitation for this Court to second-guess the Legislature's policy choices.

While Plaintiffs challenge the public interest served by Section 113, it is the Legislature's responsibility to balance those considerations, not the Court's. The Court's only role is to assess whether the Legislature's action was directed at a matter of public policy. *See Dutra*, 96 F.4th at 20 (courts solely consider "whether the statute falls within the legislative power to enact," even if the law may seem "unwise, improvident, or out of harmony with a particular school or thought"). The Legislature weighed competing interests and ultimately focused on correcting what it viewed as an error in the application of the Wage Act. *See Curtin-Wilding*, at 8.

Plaintiffs' suggestion that § 113 fails the second prong of the *Dutra* test because it eliminates their property rights ignores that any supposed entitlement to relief was highly contingent and unsecured. Such abstract interests are not the sort of right that implicates the constitutionality of a retroactive statute. *Dupont*, 46 Mass. App. Ct. at 238-39 (rejecting plaintiff's contention that they had a vested right in claims); *Dutra*, 96 F.4th at 24 (plaintiffs had no vested right to rely on implied contracts). Plaintiffs' aspirations of collecting statutory penalties are not property rights.[8] Curry moved to dismiss a portion of their claims on the basis that they are

---

[7] Plaintiffs concede that their statement is apparently based on the websites of only five of the more than 100 colleges and universities in Massachusetts. Dkt. 37 at 10, n.5.

[8] Plaintiffs' citation to a case from the 1800s describing a right of action as a property right has no bearing here, as that case had nothing to do with the retroactive application of legislation providing immunity for certain claims. *See Pritchard v. Norton*, 106 U.S. 124, 132 (1882); *see also Logan v. Zimmerman Brush*

3

preempted by Section 301 of the LMRA. And any remaining claims are subject to substantial defenses, including: (1) the Wage Act permits educational institutions to pay employees in 12 equal monthly payments; (2) the Wage Act permits monthly pay for salaried employees who elect to be paid monthly and Plaintiffs' acquiescence constituted such an election; and (3) Plaintiffs are equitably estopped from seeking penalties for a pay arrangement they accepted without protest. Plaintiffs' claims were always a roll of the dice, and § 113 does not impact their or anyone else's constitutionally vested rights.

Plaintiffs' contention that Section 113 is not narrowly tailored because it "completely eliminates" Plaintiffs' rights while protecting the rights of "a few of the more than 100 institutions of high education in Massachusetts" is contrary to the statute. It provides immunity to *all* nonprofit colleges, universities, and healthcare systems, but that immunity is not carte blanche. Section 113 only applies to claims filed before September 2028.[9] It "will affect a relatively small number of cases and is narrowly drawn to address a public policy concern determined by the Legislature to be detrimental to the welfare of the Commonwealth." *Curtin-Wilding*, at 10.

Finally, Plaintiffs' suggestion that Section 113 violates Article 11 of the Declaration of Rights because it leaves them without a remedy is already accounted for under the three-part *Dutra* test and does not present an alternative criterion for constitutionality. The cases on which Plaintiff relies do not suggest otherwise. In *Murphy v. Comm'r of Dep't of Indus. Accidents*, 415 Mass. 18, 233 (1993), the SJC struck down a statute that imposed a fee only on represented litigants as having no rational basis. The same cannot be said here because the state interest is manifest – § 113 protects two vitally important industries that have traditionally paid employees monthly. In *Pinnick v. Cleary*, 360 Mass. 1, 12 (1971), the SJC held that "changes in prior law are necessary

---

*Co.*, 455 U.S. 422 (1982) (holding plaintiff had property interest in pursuing employment discrimination claim that was barred by administrative error; no analysis of retroactive legislation).

[9] Due to the Wage Act's three-year statute of limitations, institutions will be required to change practices that otherwise might create liability within three months of the statute's passage, by September 30, 2025.

4

in any ordered society, and to argue that [Article] 11 prohibits alterations of common law rights as such, [. . .], flies in the face of all reason and precedent."[10] The only relevant inquiry is whether retroactive application of Section 113 is a reasonable exercise of the Legislature's authority, and it is.

## II.    PLAINTIFFS' CLAIMS ARE COVERED BY SECTION 113

Based on redacted documents that are not properly before this Court, Plaintiffs contend that if Section 113 is constitutional, a portion of their claims are not covered by Section 113. Specifically, they allege that the way Curry pays part-time Associate Lecturers and Lecturers pursuant to one semester contracts is not covered by Section 113. This is proven false by Plaintiffs' own allegations and the documents they seek to rely on.

Section 113 provides immunity "from liability with regard to any claim . . . that alleges that the institution's [] payment of wages . . . ***pursuant to any written policy, schedule, or agreement presented or made available to an employee*** concerning payment for work performed over an academic term violated [the Wage Act]; provided, however, that earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: . . . (ii) ***pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term***." Section 113 (emphasis added). Plaintiffs contort the plain words of Section 113 to contend that Curry "failed to pay wages earned in full within 6 days of the pay periods occurring under its own schedule." Dkt. 37, at 6.

Plaintiffs' complaint, however, alleges that Curry "maintained a policy and/or practice" of paying Associate Lecturers and Lecturers on October 1, November 1, December 1, and January 1 for the fall semester, and March 1, April 1, May 1, and June 1 for the spring semester. Dkt. 21, First Am. Compl. ¶¶ 19-20, 23. The very first exhibit to Attorney Hammond's declaration is an

---

[10] Plaintiffs' reliance on a case from the Pennsylvania Supreme Court is irrelevant here, as that court applied Pennsylvania law and precedent, which differs from the Massachusetts law on this issue.

appointment letter for the 2024 fall semester that states that total compensation will be $5,972.10 and that it will be disbursed October through January. *See* Dkt. 37-1, Ex. 1.[11] In that appointment letter, Curry set forth the applicable payment schedule. There is no allegation that this unidentified individual or anyone else was not paid pursuant to that exact schedule – quite the opposite. Just like in their Complaint, in their Opposition, Plaintiffs confirm that "for the Fall 2024 semester, Defendant paid wages in four equal installments – October 1, November 1, December 1, and January 1." Dkt. 37, at 1. The same applies for the spring semester appointment letter attached as Exhibit 3 to Attorney Hammond's declaration. It provides the total compensation for the course and states that it will be paid "March-June." Dkt. 37-1, Ex.3. Again, Plaintiffs confirm this in their Opposition. Dkt. 37-1, at 3 (describing compensation for spring semester as "fixed amounts paid in March, April, May, and June"). Curry paid faculty according to the terms of the "written . . . agreement[s] presented or made available" to them. Plaintiffs have not and cannot contend otherwise. Instead, they attempt to glean or infer some imaginary "pay period" created by the appointment letters that does not exist. The appointment letters plainly state when compensation would be paid, and Curry paid the compensation pursuant to those agreements.

## CONCLUSION

WHEREFORE, Curry respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice and grant such other and further relief as the Court deems just and proper.

---

[11] The exhibits to Attorney Hammond's declaration further underscore that Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act, as argued in Curry's pending motion to dismiss (Dkts. 22-23). Both appointment letters state that the appointments "carr[y] with [them] all of the rights and responsibilities as described in the current Agreement between Curry College and the AAUP and is subject to all provisions of the Agreement." Dkt. 37-1, Ex 3; *see also* Dkt 37-1, Ex. 1.

6

DATED: November 5, 2025                    Respectfully submitted,

                                                                         CURRY COLLEGE,

                                                                         By its attorneys:


*/s/ Molly C. Mooney*
Robert A. Fisher (BBO# 643797)
rfisher@seyfarth.com
Barry J. Miller (BBO# 661596)
bmiller@seyfarth.com
Molly C. Mooney (BBO# 687812)
mmooney@seyfarth.com
Seyfarth Shaw LLP
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone:   (617) 946-4800
Facsimile:    (617) 946-4801

Gregory A. Manousos (BBO #631455)
Catherine M. Scott (BBO #691867)
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109
(617) 523-6666
(617) 367-3125 (Fax)
gmanousos@morganbrown.com
cscott@morganbrown.com

7

320979251v.2

## **CERTIFICATE OF SERVICE**

   I, Molly C. Mooney, hereby certify that on November 5, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                    */s/ Molly C. Mooney*
                    Counsel for Defendant

320979251v.2