United States District Court
District of Massachusetts

| | |
|---|---|
| Emily MacIntyre, et al., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Curry College, )<br>)<br>Defendant. )<br>) | Civil Action No.<br>25- 10585-NMG |

MEMORANDUM & ORDER

GORTON, J.

This case arises from an alleged violation of the Massachusetts Wage Act, M.G.L. ch. 149 §148 ("the Wage Act"). Plaintiffs Emily MacIntyre and Kieth Fitts (collectively, "plaintiffs") allege that defendant Curry College ("Curry" or "defendant") paid wages in a monthly cadence, rather than weekly or biweekly, in violation of the Wage Act. Defendant moves to dismiss the claims based on federal preemption and a new state statute immunizing nonprofit, higher education institutions from such liability. For the following reason, the defendant's motion will be allowed.

## I. Background

### A. Facts

Curry College is a private university located in Milton, Massachusetts, that employs different categories of faculty to teach courses throughout the year. Generally, the faculty teach courses from August to December for the fall semester and from January to May for the spring semester. Depending on their employment designation, there are variations with respect to their pay schedules. There are three separate categories: 1) full-time faculty, 2) part-time faculty consisting of lecturers, associate lecturers and senior lecturers and 3) full- or part-time faculty who teach "overload courses" outside of their standard schedule for extra pay.

Emily MacIntyre worked at Curry College from August, 2014, until December, 2022 as an Associate Professor. She taught an overload course during the fall 2022 semester. Keith Fitts is currently employed at Curry College, worked as an associate lecturer from August, 2020, through August, 2023, and was promoted to lecturer in August, 2023. Plaintiffs bring claims on behalf of three proposed classes of employees at Curry during the class period: 1) "the Associate Lecturer Class" made up of all associate lecturers, 2) "the Lecturer Class" made up of all lecturers and 3) "the Overload Class" made up of senior lecturers and full-time faculty who taught overload courses.

Payment to members of these classes is made pursuant to single semester contracts and is disbursed in four equal installments. Payments are made on the first day of each month, starting in October and March, of the respective semesters. Those paychecks note the associated pay periods as being for the entire month after the date it is issued (e.g., the October 1 paycheck lists the pay period as October 1 to October 31). The pay periods are not strictly monthly because work for the fall and spring semesters begins in August and January, respectively.

### B. Procedural History

In March, 2025, Plaintiffs filed a class-action complaint against Curry alleging violations of the Wage Act, which regulates the cadence at which employers are required to pay wages and provides remedies for their failure to do so. Plaintiffs allege that defendant's policy of paying four equal installments of wages violates the requirements of Wage Act that they are to be paid weekly or biweekly unless an employee elects otherwise.

In May, 2025, defendant filed a motion to dismiss, in part, under Fed.R.Civ.P. (12)(b)(6) (Docket No. 22), arguing that claims with respect to the Lecturer Class and Overload Class are preempted by federal labor law and must be dismissed. It asserts that pay schedules for those classes are defined by the Collective Bargaining Agreement ("CBA") between Curry and the

Curry College Chapter of the American Association of College Professors ("the Union") and that any associated claims must be brought under the grievance procedure of the CBA.

In July, 2025, the Massachusetts Legislature passed Section 113 of Chapter 9 of the Acts and Resolves of 2025 ("Section 113") granting immunity from certain Wage Act claims to nonprofit higher education institutions. In September, 2025, defendant filed supplemental briefing (Docket No. 34) contending that he enactment of Section 113 requires the dismissal of all of plaintiffs' claims.

## II. Motion to Dismiss

Defendant has moved to dismiss plaintiffs' claims on the grounds of both federal preemption and Section 113 immunity. Because the Court agrees that plaintiffs' claims are foreclosed under Section 113, it declines to address the issue of federal preemption.

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff must state a claim for relief that is actionable as a matter of law and plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the

-4-

reasonable inference that the defendant is liable. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### B. Application

#### 1. Applicability of Section 113

Section 113 reads

> Nonprofit institutions of higher education and nonprofit organizations that comprise a health care delivery system shall be immune from liability with regard to any claim or cause of action seeking a legal or equitable remedy or other relief commenced between July 1, 2024 and September 30, 2028, inclusive, that alleges that the institution's or organization's payment of wages on a monthly basis or pursuant to any written policy, schedule, or agreement presented or made available to an employee concerning payment for work performed over an academic term violated [the Wage Act]; provided, however, that earned wages shall have been paid in full within 6 days of the termination of a pay period occurring: (i) on a monthly basis; or (ii) pursuant to any written policy, schedule or agreement presented to an employee concerning payment for work performed over a specific period or an academic term.

Plaintiffs contend that the statute does not prohibit their claims because they were not paid earned wages within six days of the termination of a pay period. They assert that defendant's policy of paying class members in four equal installments results in work performed in August and January not being compensated until October and March, more than six days after the associated monthly period has ended.

-5-

That reasoning is unavailing. While Section 113 includes the requirement that wages be paid within six days of the termination of a pay period, it also permits pay periods to be established by a policy or schedule "concerning payment for work performed over a specific period or an academic term." Here, the appointment letters furnished to plaintiffs clearly state that payment for fall and spring semesters would be made in monthly installments from October through January and March through June, respectively. Because plaintiffs have not alleged any incomplete or late payments under that schedule, Section 113 forecloses their claims.

### 2. Legality of Section 113

Plaintiffs assert several arguments that Section 113 was enacted in violation of the Massachusetts and United States Constitutions.

#### a. Article 10 of the Declaration of Rights of the Massachusetts Constitution

Plaintiffs first assert that Article 113 violates Article 10 of the Declaration of Rights to the Massachusetts Constitution, which provides that

> [e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws.

-6-

That provision has been interpreted as denying the legislature the ability to suspend a general law with respect to an individual. Paddock v. Town of Brookline, 347 Mass. 230, 236 (1964). Plaintiffs aver that Section 113 violates this principle by exempting defendants from the Wage Act while maintaining liability for "virtually every other employer in the Commonwealth." They suggest that the law immunizes exactly six defendants from liability, presumably referring to the six universities facing Wage Act claims at the time Section 113 was enacted.

That is hyperbole. Section 113 exempts all universities and health care delivery systems from liability under these specific Wage Act claims. While there may have been only six pending lawsuits at the time of its enactment, the statute forecloses future actions against all similarly situated organizations.

Article 10 also requires that all statutes have some legitimate public purpose that predominates over the benefits or injuries it confers upon private parties. Kienzler v. Dalkon Shield Claimants Tr., 426 Mass. 87, 90-91 (1997). As an initial matter, the Court defers to the legislature with respect to the necessity and reasonableness of the policy. Dutra v. Trs. of Bos. Univ., 96 F.4th 15, 20 (1st Cir. 2024). To the extent that review of the lawmakers' judgment is necessary and appropriate,

the Court concludes that curtailing the financial impact of Wage Act claims on nonprofit employers is a legitimate public interest that outweighs the impact the law may have on private parties. See Curtin-Wilding v. Trs. of Bos. Univ., No. CV 25-10432-RGS, 2025 WL 2469312, at *3 (D. Mass. Aug. 27, 2025) (finding the same).

### b. Retroactivity under the United States and Massachusetts Constitutions

Plaintiffs next assert that Section 113 is impermissibly retroactive under the United States Constitution and Massachusetts Constitution. The retroactivity analysis is identical under both frameworks. Dutra, 96 F.4th at 19. The law requires that a retroactive statute serve a legitimate legislative purpose that is furthered by rational means. Id. To that end, the parties agree that the Court should weigh the following three factors:

> (1) the nature of the public interest which explicitly or may have motivated the Legislature to enact the retroactive statute;
>
> (2) the nature of the rights affected retroactively and the reasonableness of any reliance expectations on those rights; and
>
> (3) the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored.

Id. at 20.

With respect to the first prong, the Court reaffirms its finding that mitigating the financial impact on nonprofit organizations is a legitimate policy motivation underlying Section 113. The record is clear that lawsuits under the Wage Act would have devastating financial effects upon those institutions and it is certainly within the purview of the legislature to enact laws to mitigate such consequences.

The nature of the rights affected also weigh in favor of defendant. Parties challenging the reasonableness of a retroactive statute must demonstrate that their reliance on the law was reasonable and that they would have acted differently had they known of the enactment beforehand. Leibovich v. Antonellis, 410 Mass. 568, 578, 574 N.E.2d 978, 985 (1991).

Here, plaintiffs argue not only that they relied upon the Wage Act but that it created a vested property right that cannot be retroactively revoked. Not so. The rights infringed, if any, emanate from statutory provisions of the Wage Act. Plaintiffs have no viable claim because, as previously explained, they do not purport to have been underpaid or paid later than promised. And because vindication of those rights was ill-defined, plaintiffs had no vested property interests and reliance on them was therefore unreasonable.

Finally, the Court concludes that the scope of Section 113 is narrowly tailored to address the concerns of the legislature.

The public policy underlying Section 113 is to protect specific kinds of nonprofit institutions from potential damaging effects of the Wage Act. To that end, Section 113 exempts from liability only nonprofit employers and only with respect to technical violations of the law. Accordingly, after weighing all three factors, the Court concludes that Section 113 is constitutional.

### c. Article 11 of the Massachusetts Declaration of Rights.

Finally, plaintiffs aver that Section 113 violates Article 11 of the Massachusetts Declaration of Rights, which guarantees

> a certain remedy, by having recourse to the laws, for all injuries or wrongs. . . [to] person, property, or character.

They contend that Section 113 immunity denies them, and other similarly situated plaintiffs, a remedy for claims that accrue under the Wage Act.

As explained above, the injury at issue in this case is limited to the statutory rights plaintiffs assert under the Wage Act. Article 11 has never been interpreted as providing a vested interest in a statute or as rendering any statute immutable. Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 44, 449 N.E.2d 641, 647 (1983). Plaintiffs' Article 11 claim is not viable.

### ORDER

For the forgoing reasons, the motion to dismiss of defendant Curry College (Docket No. 22) is **ALLOWED** and the case is **DISMISSED**.

So ordered.

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
Senior United States District Judge

Dated: November 10, 2025